490 So.2d 97 (1986)
Antonio Ramon GASSET, Petitioner,
v.
The STATE of Florida, Respondent.
No. 85-2356.
District Court of Appeal of Florida, Third District.
April 29, 1986.
Rehearing Denied July 21, 1986.
Thomas N. Balikes, Miami, for petitioner.
Jim Smith, Atty. Gen. and Charles M. Fahlbusch, Asst. Atty. Gen., for respondent.
Before SCHWARTZ, C.J., and BASKIN and JORGENSON, JJ.
JORGENSON, Judge.
Antonio Gasset seeks review of an order of the circuit court, appellate division, affirming his conviction in county court for driving while under the influence of alcohol. We have jurisdiction pursuant to article *98 V, section 4(b)(3), of the Constitution of the State of Florida and Florida Rule of Appellate Procedure 9.030(b)(2)(B). For the reasons which follow, we decline to grant certiorari.
Two Metro-Dade police officers observed Gasset make an erratic turn at a major intersection in southwest Dade County. The officers followed the vehicle, and, subsequently, a high-speed chase ensued at speeds of up to eighty miles an hour, all in an area best characterized as residential. On at least one occasion Gasset's vehicle spun out. The officers continued their chase with emergency lights flashing and siren intermittently being activated. Gasset drove onto his residential property and into the garage which is attached to the house. The officers arrived immediately behind him. As Gasset exited his vehicle, the officers entered the garage and arrested him; Gasset was ultimately charged with driving while under the influence (section 316.193, Florida Statutes (1983)). At no time during the sequence of the foregoing events did the officers ever lose sight of Gasset.
Relying principally on Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), Gasset argues that under fourth amendment standards his arrest was unlawful, and, therefore, the evidence of his blood-alcohol level, which was obtained from him at the police station shortly after his arrest, should have been excluded. Gasset's reliance on Welsh is misplaced. In Welsh, unlike in this case, there was no immediate and continuous pursuit; Welsh was home and in bed prior to the arrival of the law enforcement officers. Further, Welsh is predicated upon a civil non-jailable offense. The Supreme Court specifically noted that it was leaving open the question of whether the fourth amendment imposes an absolute ban on warrantless arrests in the home for "certain minor offenses." Welsh, 466 U.S. at 749 n. 11, 104 S.Ct. at 2097 n. 11, 80 L.Ed.2d at 743 n. 11.
When the State of Florida decriminalized its traffic laws, ch. 74-377, Laws of Fla., it chose to maintain criminal sanctions for certain serious traffic offenses, including reckless driving and fleeing or eluding an officer, see § 316.655(1), (4), Fla. Stat. (1985), thereby indicating the state's view of the seriousness of these offenses and the state's interest in arresting individuals who commit them. Cf. Welsh, 466 U.S. at 754, 104 S.Ct. at 2100, 80 L.Ed.2d at 746. In the instant case, the officers had abundant probable cause to arrest Gasset for reckless driving in violation of section 316.192, Florida Statutes (1983) (for a first conviction, punishable up to 90 days imprisonment and $500 fine), and fleeing or attempting to elude a police officer in violation of section 316.1935(1), Florida Statutes (1983) (punishable up to one year imprisonment and $1,000 fine). The fact that they did not arrest Gasset on these charges is of no moment; the propriety of an arrest does not turn on the charges upon which the arrest was effected. Thomas v. State, 395 So.2d 280 (Fla. 3d DCA 1981); Chaney v. State, 237 So.2d 281 (Fla. 4th DCA), cert. denied, 242 So.2d 461 (1970), cert. denied, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971). Nor can it turn on the charges ultimately filed.[1]
Gasset waived any expectation of privacy he may have had in his garage by engaging in the high-speed chase previously described and leading the officers directly to the place of his arrest.[2] The enforcement *99 of our criminal laws, including serious traffic violations, is not a game where law enforcement officers are "it" and one is "safe" if one reaches "home" before being tagged. Accord State v. Blake, 468 N.E.2d 548, 553 (Ind. Ct. App. 1984). "[A] suspect may not defeat an arrest which has been set in motion in a public place ... by the expedient of escaping to a private place." United States v. Santana, 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300, 306 (1976) (act of retreating into house cannot thwart an otherwise proper arrest); see also Bey v. State, 355 So.2d 850 (Fla. 3d DCA 1978).
Gasset's actions in this case were of sufficient gravity to justify the de minimis intrusion involved here. He jeopardized his own safety, the safety of the officers, and that of the general public. By his own actions, he cast aside any fourth amendment shield which might have served to protect him. We will not erect one for him now.
Certiorari denied.
SCHWARTZ, C.J., concurs.
BASKIN, Judge (dissenting).
I respectfully dissent from the majority opinion. I am unable to join an opinion which approves police conduct criticized by the Supreme Court of the United States. Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). The officers pursued a traffic violator for careless driving, entered a garage attached to his home late at night without first obtaining a warrant, and took him to jail without permitting him to inform his sleeping wife. While unlawfully inside Gasset's garage, the officers detected an odor of alcohol on his breath and arrested him for driving under the influence of alcohol and for careless driving. Later, they obtained the necessary breath tests which Gasset sought, unsuccessfully, to suppress.
The Supreme Court of the United States declared warrantless entry of a home presumptively unreasonable in Welsh and Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). In Welsh, the Court reaffirmed the basic constitutional principle that officers may not enter a home without a warrant in the absence of exigent circumstances. What were the exigent circumstances justifying the officers' warrantless entry into Gasset's home?[*] The state argues that delaying the arrest in order to obtain a warrant would have produced a change in Gasset's blood alcohol level. That explanation fails to establish an exigent circumstance justifying their entry because the officers did not have probable cause to believe he had been drinking until after their unlawful entry into the garage.
The gravity of the underlying offense "for which the arrest is being made," Welsh, 466 U.S. at 753, 104 S.Ct. at 2099, 80 L.Ed.2d at 745, is an important factor in determining whether exigent circumstances exist. In Welsh, the Court stated:
When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests *100 only with a warrant issued upon probable cause by a neutral and detached magistrate.
Welsh, 466 U.S. at 750, 104 S.Ct. at 2098, 80 L.Ed.2d at 743 (footnote omitted). Gasset was charged with the minor offense of careless driving and, by virtue of the blood alcohol test obtained as a result of the officers' warrantless entry, with the more serious offense of driving under the influence. Careless driving does not present an exigent circumstance, and the evidence of driving under the influence was not known to the officers when they entered Gasset's garage. Thus, no exigent circumstances authorized entry into the garage without a warrant.
The majority opinion cites reckless driving, and fleeing or eluding a police officer as a basis for finding exigent circumstances. Reckless driving? Fleeing? Eluding a police officer? Those words do not appear anywhere in the record and certainly did not constitute the "underlying offense for which the arrest [was] being made." Welsh, 466 U.S. at 753, 104 S.Ct. at 2099, 80 L.Ed.2d at 745. Those charges were neither brought by the arresting officers nor presented to the trial court. It is unprecedented for an appellate court to trade its judicial robes for police badges and institute charges not brought or even contemplated by the arresting officers.
The majority opinion cites cases for the proposition that where probable cause exists to arrest for a serious offense, it is of no moment that the arrest was effectuated on less serious charges. Thomas v. State, 395 So.2d 280 (Fla. 3d DCA 1981), and Chaney v. State, 237 So.2d 281 (Fla. 4th DCA), cert. denied, 242 So.2d 461 (Fla. 1970), cert. denied, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971). Those cases lend no support to a determination of the issue before us. Here, the record is totally silent as to the existence of probable cause for fleeing, eluding an officer, or reckless driving. Furthermore, the cited authorities do not deal with police invading the sanctity of a home.
Finally, I disagree with the majority's game analogy. It is the Constitution of the United States, not a game rule, which holds the police "out" of a home until they obtain a warrant from a neutral detached magistrate. See Welsh. If the Fourth Amendment to the Constitution has any meaning, it must be applied to protect a citizen who sought refuge in his home and bed and was not fleeing to a foreign country to avoid apprehension for a minor offense. Gasset would have been available for a lawful arrest if the officers had been able to demonstrate to a magistrate that a warrant should issue. The convenience to the police of effectuating an arrest without the burden of obtaining a warrant does not justify trampling the Constitution and ignoring Gasset's right to protection from unreasonable search and seizure.
For these reasons, I believe that the decision of the circuit court departed from the essential requirements of law. I would grant the petition for writ of certiorari, and quash the opinion of the circuit court.
NOTES
[1] The prosecutor has great discretion in deciding which charges should be filed and may decide, for a myriad of reasons, not to prosecute on certain charges notwithstanding the fact that sufficient evidence exists to support a conviction thereon. See 1 ABA Standards for Criminal Justice Std. 3-3.9 (2d ed. 1980). See generally Wilson v. Renfroe, 91 So.2d 857 (Fla. 1956); State v. Brown, 416 So.2d 1258 (Fla. 4th DCA 1982); Hield v. State, 201 So.2d 235 (Fla. 4th DCA 1967) (Andrews, J., specially concurring); State v. Hargis, 328 So.2d 479 (Fla. 1st DCA 1976) (Rawls, Acting C.J., dissenting).
[2] The authority of the officers to arrest Gasset is provided by section 901.15, Florida Statutes (1983), which states:

When arrest by officer without warrant is lawful.  A law enforcement officer may arrest a person without a warrant when:
(1) The person has committed a felony or misdemeanor or violated a municipal or county ordinance in the presence of the officer. Arrest for the commission of a misdemeanor or violation of a municipal or county ordinance shall be made immediately or in fresh pursuit.
* * * * * *
(5) A violation of chapter 316 has been committed in the presence of the officer. Such arrest may be made immediately or on fresh pursuit.
[*] The majority assumes, and I agree, that Gasset's attached garage is a part of his home in which he had a reasonable expectation of privacy. See Brown v. State, 392 So.2d 280 (Fla. 1st DCA 1980), cert. denied, 454 U.S. 819, 102 S.Ct. 98, 70 L.Ed.2d 89, reh'g denied, 454 U.S. 1069, 102 S.Ct. 619, 70 L.Ed.2d 604 (1981) (police violated Brown's Fourth Amendment rights when they entered his enclosed yard and arrested him on his back porch); see also Payton (Fourth Amendment protects individual's privacy when individual within unambiguous physical dimension of his home); Rucker v. State, 302 So.2d 490 (Fla. 2d DCA 1974) (court invalidated warrantless police entry into home to arrest youth who had committed traffic infraction).