550 So.2d 150 (1989)
Larry CHARLTON, Appellant,
v.
The STATE of Florida, Appellee.
No. 88-1162.
District Court of Appeal of Florida, Third District.
October 17, 1989.
Bennett H. Brummer, Public Defender, and Milton Hirsch, Sp. Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Steven T. Scott, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and FERGUSON and JORGENSON, JJ.
JORGENSON, Judge.
Larry Charlton appeals from a judgment of conviction and sentence of life imprisonment for armed robbery. We affirm.
A few days after Rix Eden had been robbed of his wallet and other property at gunpoint in his South Dade body shop, police received a phone call from Charmaine Smith. Ms. Smith told police that her former boyfriend, Larry Charlton, was involved in a series of robberies. She described his car and the locations which he frequented. Ms. Smith did not implicate Charlton in the Eden robbery. Three weeks later, Eden's wallet was found and returned to him. Inside the wallet was a receipt from a local gas station made out to Larry Charlton. Detective Hernandez, the lead investigator on the Eden robbery, learned that Charlton's driver's license had been suspended. Hernandez and other officers staked out a bar which, according to Ms. Smith, Charlton frequented. The officers observed Charlton enter a car and drive away. After Charlton had driven for a short distance, he was stopped by uniformed officers on Hernandez' instructions. Hernandez noticed a bulge in Charlton's pants; a patdown revealed a gun. Charlton was arrested for driving while his license was suspended and for carrying a concealed firearm. At the police station, Charlton was photographed for a photo lineup. From that photo lineup, and from a later live lineup, Eden identified Charlton as the robber.
Charlton moved to suppress the two identifications as fruits of an illegal, pretextual search. At the suppression hearing, Hernandez testified as follows:

*151 Q. On October 29th you were setting up your surveillance on the brown Cadillac because you anticipated Larry Charlton would be getting into it?
A. That's correct.
Q. You anticipated arresting Larry Charlton for Rix Eden's robbery.
A. I anticipated that, yes.
The trial court denied the motion to suppress. Following a jury trial, Charlton was found guilty of the Eden robbery. The trial court entered a judgment of conviction and sentenced Charlton to life imprisonment.
On appeal, Charlton contends that the identifications should have been suppressed as the fruits of a pretextual stop. We disagree.
Investigatory stops for noncriminal traffic infractions may raise the possibility that the stop was but a pretext for a search leading to an arrest on more serious charges. See, e.g., Arnold v. State, 544 So.2d 294 (Fla. 2d DCA 1989) (unlawful pretext stop for crossing center line); Monroe v. State, 543 So.2d 298 (Fla. 5th DCA 1989) (unlawful pretext stop for bald tire); Porcher v. State, 538 So.2d 1278 (Fla. 5th DCA 1989) (unlawful pretext stop for following other traffic too closely); Brooks v. State, 524 So.2d 1102 (Fla. 3d DCA 1988) (unlawful pretext stop for improper start of motor vehicle).
There is a vast difference, however, between a noncriminal traffic infraction and the offense for which Charlton was arrested. Driving with a suspended driver's license is a second degree misdemeanor, punishable by a term of imprisonment not exceeding sixty days. §§ 322.34(1) and 775.082(3)(b), Fla. Stat. (1985). When Charlton drove away from the bar, he committed a misdemeanor in the officer's presence. "[A] law enforcement officer may arrest a person without a warrant when ... [t]he person has committed a ... misdemeanor ... in the presence of the officer." § 901.15(1), Fla. Stat. (1985).
We are not aware of any authority that prohibits an officer from simply doing what he is charged to do: enforce the criminal laws. The officer's authority to arrest Charlton for a criminal traffic offense committed in his presence was not limited by his assignment as a robbery detective or his expectation of arresting Charlton for robbery.
Because the officer was authorized to arrest Charlton without a warrant pursuant to section 901.15(1), there is no need to analyze whether, under the standard set forth in Kehoe v. State, 521 So.2d 1094, 1097 (Fla. 1988), a reasonable officer would have stopped Charlton "solely for this violation." "[I]n the pure sense, the `pretextual stop' body of law does not apply at all." State v. Fernandez, 526 So.2d 192 (Fla. 3d DCA 1988) (where there was no evidence that officers stopped defendant's automobile for anything except enforcing traffic laws, as they had done many times, stop not pretextual), cause dismissed, 531 So.2d 1352 (Fla. 1988).
The arrest for driving with a suspended license and carrying a concealed firearm was legal; the subsequent lineups were therefore untainted and were properly admitted. The conviction and sentence are, accordingly,
Affirmed.