607 So.2d 464 (1992)
The STATE of Florida, Appellant,
v.
Elain OROZCO and Claudia Monegro, Appellees.
Nos. 91-2090, 91-2089.
District Court of Appeal of Florida, Third District.
October 6, 1992.
Robert A. Butterworth, Atty. Gen., and Jorge Espinosa and Gisele Lylen, Asst. Atty. Gen., for appellant.
Bennett H. Brummer, Public Defender, and Carol J.Y. Wilson, Asst. Public Defender, for appellees.
Before BASKIN, FERGUSON and JORGENSON, JJ.
JORGENSON, Judge.
The State appeals from an order granting defendants' motions to suppress. For the reasons that follow, we reverse.
On September 6, 1991, Metro Dade police officer Luis Fernandez received an anonymous telephone tip that a young Latin male would be leaving the Country Walk area in a vehicle carrying narcotics. Fernandez testified that the caller stated that a young Latin male, standing approximately five feet nine inches tall and weighing between 190 and 200 pounds, would be leaving a specific residential address in either a white pickup truck or small red vehicle carrying a large quantity of cocaine. The caller further stated that the departure would occur between 6:00 and 6:30 that same evening.
Fernandez arranged for a surveillance team to go to the specified location. Upon arrival, Fernandez observed a white pickup truck and a small red car parked in front of the residence.
At approximately 6:30 p.m., a woman later identified as Monegro and a man fitting the description given to Fernandez left the house and drove away in the white pickup truck. Fernandez and the surveillance team followed the truck. Soon after, the truck made an abrupt U-turn and sped up to 85 miles per hour in a residential area in an attempt to elude the surveillance team. Officer Fernandez gave chase and, once the flow of traffic forced the pickup to slow down, he stopped the vehicle. Fernandez spoke to the driver of the pickup, Orozco, and told him about the information received in the anonymous tip. Fernandez then requested consent to search the pickup; Orozco refused. The police dog handler, a member of the surveillance team, walked his K-9 around the pickup truck. The dog alerted the officers to the presence of cocaine.
Following the reading of Miranda rights, Fernandez asked Orozco whether he was willing to speak without an attorney present. *465 Orozco agreed to speak with the officer and told Fernandez that he could find a kilo of cocaine in Monegro's purse. The cocaine was then retrieved from the purse.
Both defendants were charged with trafficking in cocaine. The defendants filed a motion to suppress written and oral statements, alleging that they were the result of an illegal arrest. The trial court granted the motion, and the State appeals from that order. We reverse, as the stop was valid as the result of a lawful arrest for reckless driving.
While the surveillance team was following the pickup truck, the truck made an "abrupt" U-turn and drove through a residential community "kicking up dirt" at speeds exceeding 80 m.p.h. This act of reckless driving created probable cause for the police to arrest defendant Orozco. Section 316.192, Fla. Stat. (1991). See Gasset v. State, 490 So.2d 97 (Fla. 3d DCA) (officers engaged in 80 m.p.h. chase of vehicle in residential neighborhood had probable cause to make warrantless arrest of defendant for reckless driving), rev. denied, 500 So.2d 544 (Fla. 1986). The defendants were thus properly stopped for reckless driving.[1] As stated by this court:
[O]nce the defendant was legally stopped, the use of a sniff dog was not an unconstitutional search under the Fourth Amendment. A sniff dog's "alert" can constitute probable cause to conduct a search. Once probable cause existed to search the vehicle, no warrant was needed to authorize the search. Just as no police officer need close his eyes to contraband in plain view, no police officer armed with a sniff dog need ignore the olfactory essence of illegality. (Citations omitted.)
State v. Taswell, 560 So.2d 257 (Fla. 3d DCA 1990).
Because the stop was valid, it was error to suppress the evidence that resulted from the arrest and search.
Reversed and remanded for further proceedings.
FERGUSON, J., concurs.
BASKIN, Judge, dissenting.
The majority anchors its holding on the conclusion that defendants were properly stopped as a consequence of defendant Orozco's driving pattern, his "abrupt" u-turn, and his acceleration. Because the record discloses the stop was not predicated on Orozco's driving, but was based instead on improper grounds, I dissent.
Detective Fernandez, the only witness at the suppression hearing, testified that he set up surveillance of a residence based on an anonymous telephone call.[1] The police observed a white Latin male, Elain Orozco, and a female, Claudia Monegro, leave the house and drive away in a white pickup truck. The police followed the truck, observing that at one point it made an abrupt U-turn and accelerated. After following the truck for some distance, the police stopped the vehicle.
*466 The state argues on appeal that the orders granting the motions to suppress should be reversed. It maintains that the stop and defendants' arrests were justified by Orozco's reckless driving. That contention lacks merit for several reasons. First, the argument was not preserved for appellate review. "In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." Tillman v. State, 471 So.2d 32, 35 (Fla. 1985). The record reveals that the state failed to assert that the stop or the arrest were justified by the officers' observation of reckless driving. Furthermore, at the suppression hearing, the state argued that defendant Orozco was not under arrest when he was stopped; Orozco was informed that the officers were merely conducting a narcotics investigation. In conformity with the matters presented, the trial court entered an Order that does not contain any reference to Orozco's speed or driving style. The Order states:
... [Police] observed a male and a female enter a white pick-up truck and leave the said address... . The undercover police followed the pick-up truck in their vehicles.
9. Subsequently, the police stopped the Defendants by pulling their vehicles along side of and in front of Defendant Orozco's pick-up truck... .
11. The police stopped and detained the Defendants based solely upon the prior anonymous tip. The Defendants were not stopped for speeding or any other traffic violation.
At no point during the suppression hearing did the state cite reckless driving as justification for the stop. Because that argument was not presented to the lower court, it may not be asserted on appeal.
Even if we assume, for the sake of argument, that the issue was preserved for review, reversal would nevertheless be improper. Gasset v. State, 490 So.2d 97 (Fla. 3d DCA), review denied, 500 So.2d 544 (Fla. 1986), State v. Taswell, 560 So.2d 257 (Fla. 3d DCA 1990), and Charlton v. State, 550 So.2d 150 (Fla. 3d DCA 1989), cited by the majority in support of reversal, provide no support. Those cases are factually distinguishable from the case before us.
In Gasset, police officers first noticed defendant's car when he made an "erratic turn" at an intersection. Gasset, 490 So.2d at 98. The officers pursued the vehicle and a high speed chase ensued, with the officers' sirens and emergency lights activated. Defendant continued to flee, and finally drove into his garage where the police arrested him. Defendant was subsequently charged with driving while under the influence. This court rejected defendant's argument that his arrest was unlawful, reasoning that, regardless of the charges ultimately brought against the defendant, "the officers had abundant probable cause to arrest Gasset for reckless driving." Gasset, 490 So.2d at 98.
Here, Orozco was not followed because of an observed traffic violation or stopped because of an observed traffic violation. By the detective's own admission, Orozco was stopped so that the narcotics investigation could be completed. The state's attempt to legitimize the arrest by asserting that Orozco could have been stopped for speeding is contrived and should not be entertained by this court.
Similarly, Taswell lends no support to the majority's conclusion. There, a Florida Highway patrolman observed defendant speeding and stopped him. This court concluded that defendant was properly stopped as a result of the traffic violation. Once the stop was legally effected, there was no impediment to a dog being used to sniff defendant's vehicle. Taswell, 560 So.2d at 257. The crucial distinction between Taswell and the case before us is that defendant Taswell was observed speeding and legitimately stopped on that basis. Unlike Orozco, Taswell was not covertly followed by narcotics agents and stopped to enable a dog to sniff his vehicle for narcotics.
The defendant in Charlton was a robbery suspect. The investigating officer learned that defendant had a suspended *467 driver's license. The officer arrested him for driving with a suspended license after observing the defendant get into a car and drive away. Charlton, 550 So.2d at 150. Charlton held that the stop and arrest for a traffic infraction was not pretextual because defendant was arrested for an offense committed in the officer's presence. Charlton, 550 So.2d at 151. In the case before us, defendants were not known to the police officers prior to the surveillance. The sole reason defendants were followed was to complete a narcotics investigation. Orozco's driving pattern was noteworthy to the officers only because it posed the possibility that the officers might lose track of defendants before completing their investigation.
The First District Court of Appeal was faced with a scenario similar to the one presented by this case in Robinson v. State, 556 So.2d 450 (Fla. 1st DCA 1990). In Robinson, the police were dispatched to a location where a person was allegedly selling crack cocaine. Upon arriving at the location, the officers noticed that an individual fitting the given description was walking away from the area. The officers confronted the individual, searched him, and arrested him for possession of crack cocaine. The defendant was trespassing when police officers arrested him for committing a drug violation based on an anonymous tip.
On appeal, the state asserted that the arrest was permissible because the police had observed defendant committing the offense of trespass. The officers admitted the trespass did not prompt them to arrest defendant; rather, defendant's arrest was prompted by the information the officers received in the dispatch. The Robinson court observed that
in Gasset, the offenses observed by the police led them into the defendant's garage where an arrest on another charge was made. In the instant case, however, appellant's trespassing did not prompt the police to do anything; all of their actions were based upon the anonymous tip concerning the alleged drug offenses. In short, appellant's arrest and search was not `effected' by the trespass.
Robinson, 556 So.2d at 453.
In the present case, the officer's testimony establishes that Orozco was not stopped or arrested for reckless driving. As Detective Fernandez testified, Orozco's driving merely prompted the police officers to speed up and apprehend Orozco in order to complete their investigation. Thus, the record does not support the majority's characterization of the stop as proper. Cf. Gasset, (defendant arrested for DUI after police pursue him for reckless driving); Taswell, (defendant observed and stopped for speeding); Charlton, (defendant arrested for driving with suspended license). The impermissible stop may not be justified by speculation that a possible basis, such as reckless driving, existed for arrest, where, as here, the uncontroverted record establishes that the stop was premised solely on the unreliable anonymous tip.
Additionally, the stop may not be sustained as the conclusion of an investigation initiated by an anonymous tip. The evidence adduced at the hearing demonstrates that the police did not have a reasonable basis to suspect that defendants were carrying narcotics in the truck; consequently, the officers lacked authority to stop the vehicle to conduct an investigation.
A temporary stop of a person for further investigation may be made by the police under the Fourth Amendment based on information obtained from an anonymous tipster if that information (1) appears sufficiently reliable because of the surrounding circumstances or the nature of the information given in the tip, and (2) establishes reasonable suspicion that the defendant is committing or has committed a crime. One indication of reliability of such a tip is the specificity of the information given by the tipster because such detail carries a strong indication that the information is based on the personal observation of the tipster; another such indication of reliability is when police act promptly and verify some significant part of the information given by the tipster.
State v. Cash, 595 So.2d 279, 281 (Fla. 3d DCA 1992).
*468 "Essential to the Court's assessment of the anonymous tip, and what emerges as a significant ingredient in the test for tip reliability, is that the informant [is] able to predict meaningful future behavior through information that could only have come from a special familiarity with the suspect's affairs." State v. Diaz, 595 So.2d 969 (Fla. 3d DCA 1992), citing, Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).
In Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), the anonymous informant was able to tell police the building the suspect would be leaving, to describe, in detail, the car the suspect would be driving, and to name the suspect's destination.[2] By contrast, the tip in the case before us had a low degree of reliability. Although the anonymous caller in the present case was able to furnish the police general information regarding the identity of the Latin male defendant and his address, the tip lacked any information regarding the woman, and did not provide any information about defendants' plans or intended destinations. Cash. The information could have been supplied by anyone with minimal knowledge of defendants' regular activities. See Sapp v. State, 592 So.2d 786 (Fla. 2d DCA 1992).
In Cash, an anonymous informant told police that
a person named Cash ... would be bringing narcotics to the Sugar Hill area of Miami ... between 9:30-10:30 p.m. that night. The tipster indicated that Cash would be driving a rented white Mazda 323 automobile and provided both a partial license tag number and directions to Cash's residence. The tipster further told the officers that the defendant would first leave his residence and go to another residence ... before going out to Sugar Hill.
Cash, 595 So.2d at 280. The police fully corroborated the tipster's detailed information. Cash, 595 So.2d at 281. Here, however, the tip provided very little specificity beyond a time range and a generalized description of a man. The independent observations of Detective Fernandez and the other officers corroborated the tipster's information, but only with respect to the suspect's departure from his home at a particular time. These circumstances did not provide the officers with reasonable suspicion to stop defendants and investigate further. Here, as in Diaz, the anonymous tip did not contain sufficient indicia of reliability to justify the investigatory stop.
In summary, the police were not pursuing defendants for a traffic violation: the officers were in covert pursuit of defendants in connection with a narcotics investigation initiated by an anonymous tip. The only reason the officers concerned themselves with defendants' speed was that the officers believed that they had been discovered and that their investigation might be thwarted. Defendants were not arrested as a result of the traffic infraction, pursuant to which a dog sniff, and search of the vehicle, might have been permissible. Taswell. The state's attempt to justify the officers' impermissible conduct should be rejected. I would affirm the orders granting the motions to suppress.
NOTES
[1] The officers' decision not to arrest the defendant for reckless driving is of no moment; the propriety of an arrest does not turn on the charges upon which the arrest was effected. Gasset v. State, 490 So.2d 97, 98 (Fla. 3d DCA), rev. denied, 500 So.2d 544 (Fla. 1986); Thomas v. State, 395 So.2d 280 (Fla. 3d DCA 1981); Chaney v. State, 237 So.2d 281 (Fla. 4th DCA), cert. denied, 242 So.2d 461 (1970), cert. denied, 403 U.S. 904, 91 S.Ct. 2205, 29 L.Ed.2d 680 (1971). See also Charlton v. State, 550 So.2d 150, 151 (Fla. 3d DCA 1989) ("Because the officer was authorized to arrest [the defendant] ... there is no need to analyze whether ... a reasonable officer would have stopped [the defendant] solely for this violation."). (Citations omitted.)
[1] At the hearing on the Motions to Suppress, the detective was extensively questioned regarding the amount of information actually provided by the anonymous caller, and his recollection of the information. The detective had no notes memorializing the telephone conversation.

In the Order Granting Defendants' Motion to Suppress Evidence the trial court found:
4. On September 26, 1989, at approximate [sic] 5:00 P.M. Detective L. Fernandez, Metro Dade Police Department, South Region Narcotics Section, received an anonymous phone call. The "tipster" advised that a young latin male would be leaving 14842 S.W. 149 Court, at approximately 6:00-6:30 P.M., in a pick-up truck or small red vehicle, with and [sic] unknown amount of cocaine. This was the only information provided by the anonymous tipster.
(Emphasis added).
[2] The anonymous tipster in White, 496 U.S. at 327, 110 S.Ct. at 2414, informed police that

Vanessa White would be leaving 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attache case.