# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2023-1995
LT Case No. 2020-CF-002312-A

_____

STEPHON FORD,

   Appellant,

   v.

STATE OF FLORIDA,

   Appellee.

_____

On appeal from the Circuit Court for Lake County.
Larry Metz, Judge.

Asad Ali, of Mandell Law, P.A., Orlando, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Kristen L.
Davenport, Assistant Attorney General, Daytona Beach, for
Appellee.

January 7, 2025

EDWARDS, C.J.

   Is the undifferentiated alert behavior of a properly trained
police drug-sniffing dog sufficient to supply the sole probable cause
for a warrantless search of a car, when that K-9 officer, while

trained to alert to THC[1] among other substances, cannot distinguish between illegal pot and legal medical marijuana or hemp? In other words, is that sniff up to snuff?[2] Going forward, that dog won't hunt. Nevertheless, we affirm the trial court's denial of the motion to suppress based on application of the good faith exception.

Stephon Ford ("Appellant") appeals the denial of his motion to suppress drug evidence found during the search of a Lyft vehicle following a routine traffic stop in September 2020. Appellant asserts that the trial court erred in denying the motion to suppress, arguing that the search of the vehicle was unlawful because the drug dog used in this case cannot differentiate between illegal marijuana and legal medical marijuana or hemp. This Court has jurisdiction. Fla. R. App. P. 9.140(b)(2)(A)(i).

Facts

The following facts were developed during the evidentiary hearing held on April 1, 2022, in connection with Appellant's motion to suppress. Corporal ("Cpl.") Christie of the Groveland Police Department stopped the Lyft vehicle because it was going sixty-four (64) miles per hour in a fifty-five (55) mile per hour zone and its tag lights were not functioning.[3] There was no suspicion that the Lyft driver was impaired by drugs or alcohol. Appellant was the only rear seat passenger. The police described Appellant as nervous and agitated. Cpl. Christie requested the driver's consent to search the car, but apparently prompted by Appellant's advice, the driver refused. Cpl. Christie radioed in a request for deployment of a drug detecting K-9 unit.

---

[1] Tetrahydrocannabinol or THC is the main psychoactive component of cannabis.

[2] *Florida v. Harris,* 133 S. Ct. 1050, 1058 (2013).

[3] There was also an officer in training in Cpl. Christie's vehicle.

2

Groveland Police Officer Aponte arrived on the scene in about one minute, accompanied by K-9 officer, Polo.[4] Aponte explained to the occupants what was going to take place. Nobody inquired whether any of them had a medical marijuana card. Officer Aponte led Polo on a walk around the outside of the vehicle to conduct a free air sniff. Polo alerted to the presence of some illegal drugs during the first pass by trying to jump on the car and displaying rapid breathing with his nose up in the air. During the second pass, Polo stood stiff, stared, and planted himself next to the car, which was also typical of how he alerted to drugs. Officer Aponte explained that when Polo does detect drugs, his behavior changes, as described above.

After the occupants were removed from the car, the police searched the car and found seven mason jars filled with marijuana, baggies containing crack cocaine, ecstasy, and methamphetamine. The illegal substances, along with a debit card in his name, were found in Appellant's duffle or cooler bag, located in the rear seat. The Lyft driver confirmed that Appellant was holding that bag as he entered her car.

Because the sole basis for probable cause for the warrantless search of the car was K-9 Polo alerting, during the suppression hearing, counsel explored the dog's training and certification to serve in the role of drug detection. Officer Aponte testified that Polo received an initial six weeks of training, followed by sixteen hours each month in narcotics detection and tracking, with annual narcotics certification. Polo was trained and certified to target and detect marijuana, cocaine, heroin, and methamphetamine. Polo indicates to his handler, or alerts, that he has detected one or more of those target substances by changing behavior as he attempts to pinpoint the source. His breathing becomes rapid, and he stares at what he indicates to be the source of controlled substances.

Although not claiming to be an expert, Officer Aponte expressed his understanding that Polo alerts to the THC in marijuana. THC is present in different concentrations in various forms of cannabis, including illegal street marijuana, medical

_____

[4] Appellant does not argue that the traffic stop was itself improper or unnecessarily prolonged by summoning the K-9 unit.

marijuana, and hemp. Polo is not trained to differentiate between those forms of cannabis when he alerts, nor has he been trained to alert differently depending upon whether the cannabis is burnt or not. Furthermore, his behavior when alerting is the same regardless of which of the several target substances Polo detects during any particular free air sniff. Thus, Polo's alert to illegal marijuana is indistinguishable, even to Officer Aponte, from his alert to medical marijuana or hemp, and is likewise undifferentiated from his alert to cocaine, heroin, or methamphetamines.

The State argued that a K-9's alert even to a possibly legal substance provided probable cause for a warrantless search in reliance upon *Owens v. State,* 317 So. 3d 1218 (Fla. 2d DCA 2021) and *Johnson v. State*, 275 So. 3d 800 (Fla. 1st DCA 2019). Appellant contested whether those cases were correctly decided and their applicability to the facts here. After hearing all the testimony and considering the then-controlling case law, the trial court denied Appellant's motion to suppress the evidence found during the search of the Lyft vehicle.

While reserving his right to appeal the denial of his dispositive motion to suppress, Appellant ultimately pled no contest to, and was convicted of, trafficking in phenethylamines and possession of marijuana and sentenced to sixty-eight (68) months in prison. It is from the denial of the motion to suppress that he timely appealed. As the trial court noted, this is a case of first impression, given that all the cases argued during the suppression hearing involved human police officers who thought they smelled marijuana, but here none of the officers mentioned the smell of any illicit substance, and we do not know which of the target substances Polo detected or alerted to.

Standard of Review

"A motion to suppress presents mixed questions of law and fact." *Evans v. State*, 989 So. 2d 1219, 1221 (Fla. 5th DCA 2008). "The showing the [S]tate must make to establish probable cause for a warrantless search of a vehicle based on a drug-detection dog's alert to the vehicle involves a trial court's determination of the legal issue of probable cause, which [an appellate court] review[s] de novo." *Bennett v. State*, 111 So. 3d 983, 983–84 (Fla.

4

1st DCA 2013) (citing *Pagan v. State*, 830 So. 2d 792, 806 (Fla. 2002) (additional citation omitted)). However, an appellate court "must defer to a trial court's findings of fact as long as the factual findings are supported by competent substantial evidence." *Bennett*, 111 So. 3d at 984 (citations omitted).

<u>Analysis</u>

A warrantless search is generally considered per se unreasonable unless it falls within a few specifically established and well-delineated exceptions. *State v. M.B.W.*, 276 So. 3d 501, 509 (Fla. 2d DCA 2019). The proponent of a motion to suppress carries the initial burden of establishing that a search occurred and was invalid. *State v. Mobley*, 98 So. 3d 124, 125 (Fla. 5th DCA 2012). Here, the record is clear that Appellant met his initial burden, proving there was neither consent nor a warrant authorizing the search; thus, the burden shifted to the State to prove that the evidence sought to be suppressed was obtained lawfully. *State v. Gay*, 823 So. 2d 153, 154 (Fla. 5th DCA 2002).

One exception to the warrant requirement is for searches conducted based on probable cause. *Engle v. State*, 391 So. 2d 245 (Fla. 5th DCA 1980). "A police officer has probable cause to conduct a search when 'the facts available to [him] would warrant a [person] of reasonable caution in the belief' that contraband or evidence of a crime is present.'" *Florida v. Harris*, 133 S. Ct. 1050, 1055 (2013) (internal citations omitted). "The test for probable cause is not reducible to 'precise definition or quantification.'" *Id.* (internal citation omitted). "In dealing with probable cause, . . . as the very name implies, we deal with probabilities." *Brinegar v. United States*, 69 S. Ct. 1302, 1310 (1949).

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 103 S. Ct. 2317, 2329 (1983). "Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, . . . have no place in the [determination of probable cause]." *Id.* at 2330. Whether the basis for probable cause is proved by machine, man, or beast, "[a]ll we have required is the kind of 'fair probability' on which 'reasonable

5

and prudent [people,] not legal technicians, act.'" *Harris*, 133 S. Ct. at 1055.

In the past, an alert by a properly trained police dog was usually accepted as providing probable cause for a search. *State v. Robinson*, 756 So. 2d 249, 250–51 (Fla. 5th DCA 2000) (citing *State v. Orozco*, 607 So. 2d 464 (Fla. 3d DCA 1992), *rev. denied*, 614 So. 2d 503 (Fla. 1993); *Osorio v. State*, 569 So. 2d 1375 (Fla. 2d DCA 1990); and *State v. Siluk*, 567 So. 2d 26 (Fla. 5th DCA 1990)). The United States Supreme Court advises that "a probable-cause hearing focusing on a dog's alert should proceed much like any other." *Harris*, 133 S. Ct. at 1058.

On appeal, nobody questions K-9 Polo's training and ability to detect and alert to the target substances listed earlier in the opinion. Given that several of the target substances (marijuana, cocaine, and methamphetamines) were found during the search of the Lyft vehicle, we do not know which substance or substances Polo detected and alerted to. However, as Appellant asserted below and on appeal, it is indeed possible that Polo alerted to the THC in the marijuana found in Appellant's duffle bag.

Appellant argues that because Polo cannot distinguish between the THC in legal medical marijuana or hemp and illegal marijuana, his alert may be to a perfectly legally substance. "The incremental legalization of certain types of cannabis at both the federal and state level has reached the point that its plain smell does not immediately indicate the presence of an illegal substance." *Baxter v. State*, 389 So. 3d 803, 810–11 (Fla. 5th DCA 2024).

Probable cause for a warrantless search is to be determined based upon the totality of the circumstances. *Harris*, 133 S. Ct. at 1055 (citations omitted). Here, the testimony is uncontroverted that the sole basis offered to justify the search of the vehicle was K-9 Polo's alert to one or more of those target substances. This is truly a "plain smell" case, and there are no other circumstances to consider in determining whether probable cause for this warrantless search existed beyond what could be gleaned from Polo's alert. The "plain smell" doctrine is a logical extension of the "plain view" doctrine. *Baxter*, 389 So. 3d at 809 (internal citations omitted). For probable cause to be properly based on the

6

perception of something via plain view or plain smell, its incriminating character, *inter alia*, must be "immediately apparent" to the percipient witness. *Sawyer v. State*, 842 So. 2d 310, 312 (Fla. 5th DCA 2003) (officer's perception of a single white pill in plain view was insufficient, as incriminating nature was only appreciated once pill was seized and imprinted design was seen on closer inspection).

At the time when Polo alerted to a target substance in the Lyft vehicle, the police officers had no way of knowing whether Polo had detected an illegal substance (marijuana, cocaine, heroin, or methamphetamines) or a legal substance, namely the THC in hemp or medical marijuana that was properly prescribed and in the possession of a bona fide medical marijuana card holder. Polo was trained to alert in the same manner when he encountered any of those substances; thus, as Officer Aponte testified, the dog's alert did not tell them which target substance(s) had been detected. Whether the substance Polo smelled was legal or illegal was not readily apparent, and thus his alert, alone, could not provide the probable cause needed to justify a warrantless search. *Baxter*, 389 So. 3d at 809. While no hemp or medical marijuana was found, "we do not evaluate probable cause in hindsight, based on what a search does or does not turn up." *Harris*, 133 S. Ct. at 1059.

Under the facts of this case, we conclude that the police could not rely solely upon K-9 Polo's alert to provide probable cause to justify the warrantless search of the Lyft vehicle and its contents. However, in denying Appellant's motion to suppress, the trial court properly applied then-binding precedent, given that the sole pronouncements were not in conflict even though they came from outside our district. *Pardo v. State*, 596 So. 2d 665, 666 (Fla. 1992) ("[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts."). Although the trial court was correct in its analysis and ruling at the time, our recent holding in *Baxter* has changed the legal landscape within the Fifth District such that the plain smell—whether perceived by man or man's best friend—of a distinct odor which may have emanated from a legal substance does not, by itself, supply probable cause to conduct a warrantless search of a vehicle. Taking *Baxter* into account, the trial court's ruling is legally erroneous, and the exclusionary rule

would ordinarily require suppressing the evidence obtained during the search of the Lyft vehicle and its contents. However, our analysis is not yet complete.

## Good Faith Exception

As noted by the United States Supreme Court, "[t]he Fourth Amendment protects the right to be free from 'unreasonable searches and seizures,' but it is silent about how this right is to be enforced." *Davis v. United States*, 131 S. Ct. 2419, 2423 (2011). "To supplement the bare text, this Court created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Id.* However, that Court recognized the need for and created the "good faith" exception to the exclusionary rule for those circumstances in which police conduct a search in objectively reasonable reliance on then-binding appellate precedent which is later overruled. *Id.* Under those circumstances, there is no police misconduct that would be deterred; thus, evidence obtained in those circumstances will not be excluded. *Id.* at 2423–24.

In September 2020, when the subject traffic stop and search were conducted, the law was clear in the Fifth District that the smell alone of marijuana, detected by one trained and familiar with its odor, would provide probable cause to conduct a warrantless search of the person or vehicle from which it emanated. *State v. Williams*, 739 So. 2d 717, 718 (Fla. 5th DCA 1999); *State v. T.T.*, 594 So. 2d 839, 840 (Fla. 5th DCA 1992). Similarly, in *Robinson*, this Court held that "[a]n alert by a properly trained police [drug-sniffing] dog provides probable cause for a search." 756 So. 2d at 250.

Despite the advent of state legalized medical marijuana and hemp, the law in this District did not change until this Court's recent decision in *Baxter*. While we could not and did not overrule *Johnson* or *Owens*,[5] our conflicting opinion, *Baxter*, has a similar, but geographically limited effect, such that neither case is now

---

[5] The *Owens* case had not yet been decided at the time the officers searched the subject car, although it was in place by the time the motion to suppress hearing was held.

8

good law in the Fifth District. That *Baxter* involved a human police officer who perceived an odor while in this case it was a K-9 officer that perceived an odor, which in both cases could have emanated from perfectly legal sources, makes no difference here, as in both cases it was a human who decided to conduct the warrantless search.[6]

In *Baxter*, we determined that the officer conducting the warrantless search did so in reasonable reliance on previously binding case law and affirmed the trial court's denial of Baxter's motion to suppress. 389 So. 3d at 813. We reach the same conclusion here that the officers' search of the Lyft vehicle and its contents based solely upon Polo's alert was consistent with then-controlling precedent. Thus, based on the good faith exception articulated in *Davis*, we affirm the order denying Appellant's motion to suppress.[7]

AFFIRMED.

PRATT, J., concurs with opinion.
MACIVER, J., concurs in result only.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

[6] In *Robinson,* our Court did not address issues that only arose following Florida's legalization of medical marijuana and hemp. We question the durability of *Robinson*'s generalized holding if it were to be applied in a set of circumstances similar to our case.

[7] While our decision is irreconcilable with *Owens*, given the slightly different factual situations, we do not consider the two to be directly or explicitly in conflict.

PRATT, J., concurring.

If the apparent smell of cannabis, standing alone, does not establish reasonable suspicion, *see Baxter v. State*, 389 So. 3d 803, 806, 812–13 (Fla. 5th DCA 2024) (en banc), it cannot establish probable cause, either. Of the two standards, probable cause is the more demanding one. *See Baptiste v. State*, 995 So. 2d 285, 291 (Fla. 2008). A failure to establish the lesser also must fail to establish the greater. And because Officer Aponte could not determine whether Polo had alerted to legal cannabis or an illicit substance, *Baxter* controls.

As *Baxter* and this appeal both show, cannabis legalization carries collateral consequences. Even though federal and state criminal laws continue to prohibit cannabis in at least some of its forms and under many circumstances,[1] our court has determined that, due to recent changes in cannabis' legal status, its odor alone no longer indicates criminal activity to the degree required for an investigatory stop (*Baxter*) or a full search (our decision today). These holdings have implications for law enforcement's future interactions with drug users and traffickers.

As here, it is often the case that marijuana travels alongside other drugs and contraband. Law enforcement regularly relies on dog sniffs to locate these illicit substances. *See, e.g., Florida v. Harris*, 568 U.S. 237, 247–48 (2013) (chemical pseudoephedrine with intent to manufacture methamphetamine); *Robinson v. State*, 327 So. 3d 1276, 1277 (Fla. 1st DCA 2021) (methamphetamine and hydrocodone); *State v. Robinson*, 756 So. 2d 249, 250–51 (Fla. 5th

---

[1] While hemp is now legal under both state and federal law, federal law continues to criminalize all marijuana, and Florida law allows marijuana only when for "medical use." *See Baxter*, 389 So. 3d at 809–10 & n. 4 (discussing federal and state legislative developments); *see also* 21 U.S.C. § 802(16) (defining marijuana as a controlled substance); 21 U.S.C. §§ 841–43 (prohibited acts with respect to controlled substances).

DCA 2000) (cocaine); *State v. Orozco*, 607 So. 2d 464, 464–65 (Fla. 3d DCA 1992) (cocaine); *Osorio v. State*, 569 So. 2d 1375, 1376 (Fla. 2d DCA 1990) (cocaine); *Vetter v. State*, 395 So. 2d 1199, 1200 (Fla. 3d DCA 1981) (cocaine). But going forward, under our decision today—which faithfully applies *Baxter*—dogs trained to alert on cannabis can no longer provide the sole basis for a stop or search.

Under our precedent,[2] cannabis legalization no doubt has triggered a setback for drug-detecting canine officers. But it need not mark their retirement. For one thing, whatever "the durability of *Robinson*'s generalized holding if it were to be applied in a set of circumstances similar to our case," *ante*, at n. 6, our decision today does not otherwise call it into doubt. There is nothing incompatible between today's decision and the proposition that "[a]n alert by a *properly trained* police [drug-sniffing] dog provides probable cause for a search." *Robinson*, 756 So. 2d at 250 (emphasis added). An alert by a dog trained not to alert to cannabis—or to alert to cannabis differently than it alerts to other drugs—can still on its own supply probable cause. And for another thing, even without such canine training, an undifferentiated alert can supply probable cause when combined with an officer's questions ruling out the presence of lawful cannabis. Officers easily can be trained to ask such questions in conjunction with a dog's undifferentiated alert.

In either case, today's decision does not overrule *Robinson*'s general holding. Much less does it erase a valuable law-enforcement investigatory tool. Whether through an update to human officer training or an update to canine officer training, I expect that law enforcement can continue to rely on dog sniffs to support its critical drug-interdiction efforts within our district.

---

[2] *Baxter* certified conflict with *Owens v. State*, 317 So. 3d 1218 (Fla. 2d DCA 2021). *See* 389 So. 3d at 813.