680 So.2d 612 (1996)
Anton DYER, Appellant,
v.
The STATE of Florida, Appellee.
No. 96-155.
District Court of Appeal of Florida, Third District.
October 9, 1996.
*613 Bennett H. Brummer, Public Defender, and Lisa Walsh, Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General, and Steven Groves, Assistant Attorney General, for appellee.
Before BARKDULL, NESBITT and GERSTEN, JJ.
PER CURIAM.
Anton Dyer entered a plea of nolo contendere to charges of possession with intent to sell cocaine and possession with intent to sell cannabis, but specifically reserved his right to appeal the denial of a motion to suppress evidence. We affirm.
The facts of this case are undisputed. It appears that a Metro Dade officer on patrol saw Dyer standing near an abandoned house. When Dyer saw the officer he became startled and began to run away. He ran into a vacant lot known for narcotics and prostitution and the officer followed. Dyer threw a clear plastic bag to the ground just before he got to a wooden fence. The officer observed that it contained marijuana in a misdemeanor amount. He then yelled "police" and followed Dyer as he jumped the fence into an enclosed yard. The officer took Dyer into custody whereupon a search incident to arrest revealed 32 bags of cocaine and 13 bags of marijuana. The officer later learned that the yard and house were the defendant's property, although he testified that he was unaware of this when the arrest was made.
Dyer filed a motion to suppress the cocaine and the cannabis. He argued that the arrest violated both the Fourth and Fourteenth Amendments to the United States Constitution and also section 901.19, Florida Statutes (1995). The trial judge denied the motion and entered a lengthy and well-reasoned order which contains a two-part analysis. In the constitutional analysis portion of the order, the trial judge distinguishes the facts in this case from Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), which is the case that the defendant relies upon in support of reversal. That portion of the order reads in part:
In the case at issue the initial offense, possession of a misdemeanor amount of marijuana is a relatively minor one in terms of danger to the community. It is, however, classified as a much more serious offense than in Welsh, since it is clearly a criminal offense as opposed to a civil forfeiture and is punishable up to a year in jail. What makes this offense somewhat more serious than a simple misdemeanor under the facts of this case, is that when Officer Vila began to chase the Defendant, the Defendant hopped a fence into private property. Officer Vila testified that he did not know this was the Defendant's property and did not know if the Defendant was intending to continue to flee to the next yard or run into the home without permission, thereby endangering potential occupants and in so doing, be committing the felony offense of burglary. What we must remember is that it is the reasonableness of the officer's actions which must be examined. This Court finds it reasonable for Officer Vila, who had chased the Defendant who he did not know, through a vacant lot and then over a fence, to believe that the Defendant was going to continue to hop fences and flee through yards until apprehended. It is undisputed that he did not know this was the Defendant's yard. It was also reasonable for him to conclude that when the Defendant entered the curtilage of that house to commit the crime of resisting arrest without violence, the Defendant was committing the felony offense of Burglary. The seriousness of the Defendant's offense was certainly greater than in Welsh which was classified as a civil forfeiture only.
The second major distinction is that Officer Vila was clearly in hot pursuit. The *614 pursuit was sudden unexpected and continuous.
The third distinction is that there existed an exigency apart from the hot pursuit. Officer Vila did not know who the Defendant was or where he lived. If the Defendant escaped, Officer Vila would not have been able to obtain a warrant since he could not identify the Defendant. He was all alone. He could not surround the house and cover all exits to contain the Defendant and had no idea which side of that fenced in yard the Defendant would choose to flee from. Officer Vila clearly could not cover all areas and did not have time to radio for assistance when the Defendant jumped the fence and he believed he was going to continue to flee across the yard and on into the adjacent yards to escape the officer.
And finally, this Court notes that the entry occurred at 5:15 in the afternoon on a summer day, in broad daylight and that the intrusion was slight as it was not in the Defendant's home, not in the Defendant's doorway, but in the Defendant's yard. There was no force used either in the entry or in the apprehension of the Defendant and the arrest of the Defendant was certainly a not planned event. As the United States Supreme Court stated in Warden[1], the act of retreating into the house or as in his case, the Defendant's yard, cannot thwart an otherwise proper arrest.
Based upon these factors, this Court finds that the warrantless entry into the fenced in yard which turned out to be the Defendant's yard, did not violate the Defendant's Fourth Amendment rights.
We find no error in the trial judge's reasoning and would only cite in addition Gasset v. State, 490 So.2d 97 (Fla. 3d DCA), review denied, 500 So.2d 544 (Fla.1986) in which this court held that the defendant's Fourth Amendment rights were not violated when officers followed him in hot pursuit and finally arrested him in his garage for driving under the influence.
The statutory analysis portion of the trial court's order reads in part as follows:
The Defendant, however, argues that § 901.19(1) limits warrantless entries into one's home or onto one's property to felony arrests and cites to several cases in support of his position.
* * * * * * * *
This Court declines to extend F.S. 901.19 to instances where the police in hot pursuit chase a suspect into a yard they had no reason to believe was the Defendant's, to arrest the Defendant without a warrant for a misdemeanor, especially in light of the exigent circumstances which existed at the time and the reasonableness of the officer's actions. The decision not to expand § 901.19 any further than it already has been expanded is based in part on the original intent of the statute.
* * * * * * * *
The title of this statute announces its purpose: "Right of officer to break into building." The wording of the statute supports this conclusion. It addresses when force may be used to enter any building or property. This statute does not address and does not appear to be concerned with those situations where force is not required.
We agree with the trial judge's reasoning that Florida Statute 901.19 (1995), as its title clearly states, is intended to apply to those situations where an officer breaks into a building. Ortiz v. State, 600 So.2d 530 (Fla. 3d DCA 1992), which is cited by the defendant to support his argument that section 901.19 vitiates his arrest in this case, is distinguishable. That case involved entry into an apartment and clearly states that "[s]ection 901.19, Florida Statutes (1989), defines the authority of a law enforcement officer to make a nonconsensual entry into a building in order to make an arrest." Id. at 531. This interpretation makes sense because it is difficult to see how section 901.19, Florida's "knock and announce" statute, could realistically be applied to a situation *615 where a fleeing suspect is apprehended in a back yard.
Based upon the above stated reasoning, we affirm the denial of the motion to suppress.
Affirmed.
NOTES
[1] Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).