COMMONWEALTH *vs.* KEVIN M. DUSSAULT.

No. 07-P-919.

Norfolk. February 13, 2008. - April 10, 2008.

Present: CYPHER, KANTROWITZ, & GRAHAM, JJ.

*Motor Vehicle,* Operating under the influence. *Habitual Offender. Practice, Criminal,* Defendant's decision not to testify, Instructions to jury, Waiver of trial by jury. *Evidence,* Prior conviction.

At the trial of a criminal complaint charging the defendant with, inter alia, negligently operating a motor vehicle in violation of G. L. c. 90, § 24, the judge's error in failing to give the requested jury instruction regarding adverse inferences and a nontestifying defendant did not give rise to a substantial risk of a miscarriage of justice, where the evidence against the defendant was overwhelming, and where the defendant failed to demonstrate how the error made an impact on the jury's deliberations. [544-545]

At the jury-waived trial of the portion of a criminal complaint charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor, third offense, in violation of G. L. c. 90, § 24, the judge properly concluded that the Commonwealth had satisfied its burden of proof that the defendant was the same person who committed the prior offenses by submitting in evidence the defendant's certified conviction records, which matched the defendant's full name, including his middle initial and unusual surname, along with additional biographical information that correlated with the defendant's identity. [545-547]

At the jury-waived trial of the portion of a criminal complaint charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor, third offense, the judge's failure to conduct a jury waiver colloquy or to obtain a signed jury waiver form from a criminal defendant prior to proceeding constituted reversible error, where defense counsel's stipulation to the defendant's waiver was insufficient to establish that his waiver was voluntary, knowing, and intelligent. [547-549]

COMPLAINT received and sworn to in the Wrentham Division of the District Court Department on January 30, 2006.

The case was heard by *Emogene Johnson Smith,* J.

*David D. Nielson* for the defendant.

*Alexei Tymoczko,* Assistant District Attorney, for the Commonwealth.

GRAHAM, J. The defendant was tried in the District Court and convicted by a jury of negligently operating a motor vehicle in violation of G. L. c. 90, § 24; operating a vehicle while under the influence of intoxicating liquor (OUI), third offense, in violation of G. L. c. 90, § 24; and two civil motor vehicle infractions: crossing marked lanes in violation of G. L. c. 89, § 4A; and exceeding the posted speed limit in violation of G. L. c. 90, § 17. While the jury was deliberating, defense counsel notified the judge that if the defendant was found guilty of the underlying OUI charge, he would waive a trial by jury on the third offense portion of the OUI charge. After a jury-waived trial, the defendant was found guilty of OUI, third offense.

On appeal, the defendant claims the following errors: the judge's failure to instruct the jury, as promised, not to draw any adverse inference from the defendant's decision not to testify was an error that created a substantial risk of a miscarriage of justice; the Commonwealth's evidence of prior OUI offenses was insufficient to convict the defendant of OUI, third offense; and the judge failed to engage in a jury waiver colloquy and failed to obtain a signed jury waiver form from the defendant prior to conducting the jury-waived portion of the case.

*Facts.* On January 29, 2006, at approximately 10:30 P.M., Medway police Officer Robert O'Neill was patrolling in his marked cruiser on Route 109 when he observed the defendant speeding past him in the opposite direction. O'Neill reversed the direction of his vehicle and followed the defendant. He determined through his radar equipment that the defendant exceeded the posted speed limit (thirty and then thirty-five miles per hour) by twenty-eight miles per hour, and then by eighteen miles per hour. He also observed the defendant weave across the double yellow lines several times.

O'Neill activated his emergency lights and pulled over the defendant's vehicle. When he approached, he smelled a strong odor of alcohol emanating from the vehicle and the defendant's person. He also noted that the defendant's eyes were bloodshot and glassy, and that his speech was slurred. When O'Neill inquired of the defendant and his passenger whether they had been drinking, the defendant first denied that he had consumed alcohol, but after the passenger contradicted him, the defendant

admitted that he had drunk "a few" alcoholic beverages. When requested, the defendant produced his operator's license, though the listed address did not correspond to his current address. The defendant also produced the vehicle's registration, which indicated ownership by a third party who was not present in the vehicle. O'Neill returned to his cruiser and called for backup officers.

When backup Officers McRoberts and McLaughlin arrived, O'Neill asked the defendant to exit his vehicle. As the defendant walked to the rear of the vehicle, he was unsteady on his feet and had to use the car to balance himself. O'Neill determined that the defendant was intoxicated and placed him under arrest. McRoberts then conducted an inventory search of the vehicle and discovered several empty beer cans and a "nip bottle" of liquor.

*Discussion.* 1. *Jury instruction.* The defendant claims that the judge erred in failing to give the requested instruction regarding adverse inferences and a nontestifying defendant. Where, as here, the defendant failed to object to the judge's failure to provide the requested jury instruction, we review to determine whether the alleged error created a substantial risk of a miscarriage of justice. Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979) ("No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, specifying the matter to which he objects and the grounds of his objection"). See *Commonwealth* v. *McDuffee*, 379 Mass. 353, 357 (1979); *Commonwealth* v. *Alphas*, 430 Mass. 8, 13 (1999). In determining whether the failure to give an instruction created such a risk, we apply the test enunciated in *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967), that is, (1) whether the Commonwealth presented a strong case against the defendant; (2) whether the error is "sufficiently significant in the context of the trial to make plausible an inference that the [jury's] result might have been otherwise but for the error"; and (3) whether it can be inferred "from the record that counsel's failure to object was not simply a reasonable tactical decision." *Commonwealth* v. *Alphas*, *supra*, quoting from *Commonwealth* v. *Miranda*, 22 Mass. App. Ct. 10, 21 (1986).

Here, the evidence against the defendant was overwhelming. O'Neill observed the defendant driving in an erratic manner, weaving through lanes of traffic and traveling at nearly twice the posted speed limit. The defendant's eyes were bloodshot, his speech was slurred, his breath smelled of alcohol, and his gait was unsteady. The defendant also admitted that he had been drinking on the evening in question. An inventory search revealed several empty beer cans and a "nip bottle" of liquor strewn about the vehicle.

Additionally, the defendant failed to demonstrate how the error made an impact on the jury's deliberations. The defendant correctly pointed out that a defendant's right not to testify, and his related right to a jury charge to that effect, are profound. See *Commonwealth* v. *Sneed,* 376 Mass. 867, 871-872 (1978). However, the Supreme Judicial Court specifically has noted that the instruction often functions as a double-edged sword, and that the effect of the instruction on the jury's deliberations is equivocal. See *Commonwealth* v. *Buiel,* 391 Mass. 744, 746-747 (1984) ("It is difficult to determine whether such an instruction is beneficial to a particular defendant or to defendants as a group. On the one hand, it warns the jury against drawing inferences adverse to the defendant from his not testifying. On the other hand, such an instruction may focus the jury's attention on the question why the defendant decided not to assist the jury in their fact-finding function"), abrogated in part by *Commonwealth* v. *Rivera,* 441 Mass. 358, 368-371 (2004). Furthermore, there is no allegation that the judge or the prosecutor improperly referred to the defendant's silence. Contrast *Commonwealth* v. *Goulet,* 374 Mass. 404, 412-413 (1978); *Commonwealth* v. *Sneed, supra* at 872. Based on the overwhelming evidence of the defendant's guilt, and the absence of any showing of prejudice, we are confident that the failure to give the requested instruction was an error that did not create a substantial risk of a miscarriage of justice.

2. *Proof of prior offenses.* The defendant claims that the Commonwealth's evidence regarding the two prior convictions was insufficient because the certified conviction records contained limited biographical information that failed to demonstrate beyond a reasonable doubt that the defendant was the same person who committed those crimes.

When a defendant claims that the evidence was insufficient to prove his guilt, we review to determine whether, upon "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Andrews*, 427 Mass. 434, 440 (1998), quoting from *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). "We may consider circumstantial evidence of guilt together with inferences drawn therefrom that appear reasonable and not overly remote." *Commonwealth* v. *Andrews, supra.*

General Laws c. 90, § 24(4), as appearing in St. 2005, c. 122, § 6A, provides that "certified attested cop[ies] of original court papers" shall be "prima facie evidence" that a defendant previously was convicted.[1] *Commonwealth* v. *Maloney*, 447 Mass. 577, 581 (2006). "In criminal cases, when evidence 'A' is prima facie evidence of fact 'B,' then, in the absence of competing evidence, the fact finder is permitted but not required to find 'B' beyond a reasonable doubt." *Ibid.* "[P]rima facie provisions . . . represent the Legislature's considered judgment that certain evidence (usually administratively easier to produce) is so probative of an aspect of a crime that it is sufficient to meet the Commonwealth's burden of production on that issue." *Id.* at 590.

Read into § 24(4) is the additional requirement that the documentation reflecting a conviction be linked to the defendant before such documentation can be prima facie evidence of a conviction. *Id.* at 582. While "identity of name" alone is insufficient, when the conviction records "include more identifying information than merely the offender's name, . . . this requirement will be met." *Id.* at 588 (footnote omitted). See *Commonwealth* v. *Bowden*, 447 Mass. 593, 602 (2006).

---

[1] General Laws c. 90, § 24(4), as appearing in St. 2005, c. 122, § 6A, provides that: "In any prosecution commenced pursuant to this section, introduction into evidence of a prior conviction or prior finding of sufficient facts by either original court papers or certified attested copy of original court papers, accompanied by a certified attested copy of the biographical and informational data from official probation office records, shall be prima facie evidence that a defendant has been convicted previously or assigned to an alcohol or controlled substance education, treatment, or rehabilitation program because of a like offense by a court of the commonwealth one or more times preceding the date of commission of the offense for which said defendant is being prosecuted."

The conviction records here satisfied the Commonwealth's burden. The records matched the defendant's full name, including his middle initial, and the judge also took into account the fact that the defendant's last name was an unusual one. The court records provided additional biographical information that correlated with the defendant's identity, including date of birth and town of residence. The addresses on both convictions also were associated with the defendant: the address for one conviction correlated with the address listed on the defendant's probation records, and the address listed for the other conviction matched the address of the registered third-party owner of the vehicle the defendant was driving. Accordingly, the judge properly concluded that the Commonwealth satisfied its burden of proof. There was no error.

3. *Jury waiver.* We come to the most compelling argument, that the third offense OUI conviction is invalid because the judge failed to conduct a jury waiver colloquy or procure a written waiver from the defendant. A defendant's right to a trial by jury is ensured by the Sixth and Fourteenth Amendments to the United States Constitution. See *Duncan* v. *Louisiana,* 391 U.S. 145, 149-150 (1968); *Commonwealth* v. *Osborne,* 445 Mass. 776, 780 (2006). A defendant may waive this right, but a conviction based on such waiver cannot stand if the waiver is not voluntarily and intelligently made. *Ciummei* v. *Commonwealth,* 378 Mass. 504, 507-509 (1979). We established a bright-line rule in *Ciummei* that to effectively waive his right to a jury trial, a defendant must sign a written waiver form pursuant to G. L. c. 263, § 6,[2] and the trial judge must conduct a colloquy to assure himself that the defendant's waiver was voluntary, knowing, and intelligent. See *Ciummei* v. *Commonwealth, supra* at 509. See also *Commonwealth* v. *Pavao,* 423 Mass. 798, 800-802 (1996) (recognizing the bright-line rule in *Ciummei* that requires both a colloquy and a written jury trial

---

[2]General Laws c. 263, § 6, as appearing in St. 1979, c. 344, § 19, provides, in relevant part: "Any defendant in a criminal case other than a capital case, whether begun by indictment or upon complaint, may, if he shall so elect, when called upon to plead, or later and before a jury has been impanelled to try him upon such indictment or complaint, waive his right to trial by jury by signing a written waiver thereof and filing the same with the clerk of the court."

waiver). Absent satisfaction of both requirements, a conviction cannot stand. See *id.* at 801-804 (convictions reversed where defendant did not sign a written jury trial waiver); *Commonwealth v. Wheeler*, 42 Mass. App. Ct. 933, 934 (1997) ("absence . . . of a written waiver contravenes [*Ciummei*'s] bright line rule and renders the defendant's [oral] waiver invalid").

Here, the defendant did not sign a written waiver of his right to a jury trial, nor did the trial judge conduct a colloquy to determine whether the waiver was voluntary and intelligent. Defense counsel's stipulation to the defendant's waiver is insufficient. To hold otherwise would "saddl[e] the defendant with the consequences of his counsel's strategy [and] would be inconsistent with the purpose of the rule to assure that the ultimate decision regarding waiver of the jury be left to the defendant himself, not his counsel." *Commonwealth v. Pavao, supra* at 803.

While the Commonwealth concedes that an effective and procedurally adequate jury trial waiver generally requires a colloquy and a written waiver, it argues that such safeguards are not required during the sentencing stage of a G. L. c. 278, § 11A, bifurcated trial because the defendant is not facing a criminal conviction of a separate crime, but rather a sentencing enhancement. See *Commonwealth v. Fernandes*, 430 Mass. 517, 520 (1999), cert. denied sub nom. *Martinez v. Massachusetts*, 530 U.S. 1281 (2000), quoting from *Bynum v. Commonwealth*, 429 Mass. 705, 708-709 (1999) ("[T]he repeat-offender provisions of the [OUI] statute do not identify a freestanding crime. Rather they concern 'solely the sentence of a person convicted of a [current] violation . . . who has previously been convicted of at least one similar [OUI] offense' "). We disagree.

It has been established clearly that, while a defendant may waive a jury trial on the subsequent offense portion of a trial, the procedural safeguards mandated under *Ciummei* are required in the second portion of the bifurcated proceedings. See *Commonwealth v. Chaplin*, 50 Mass. App. Ct. 365, 367 (2000); *Commonwealth v. Petersen*, 67 Mass. App. Ct. 49, 55 (2006). See also *Commonwealth v. Murchison*, 35 Mass. App. Ct. 269, 275-276 (1993), *S.C.*, 418 Mass. 58 (1994) ("[T]here was a mistake in the treatment of the issue of second offense. The defendant had a right to jury trial upon it, . . . but could relinquish that

right by his written waiver, see G. L. c. 263, § 6; *Commonwealth* v. *Smith*, 403 Mass. 489, 493 [1988], voluntariness and understanding having been established by full oral colloquy. . . . Here the judge [erroneously] proceeded to a bench trial without the safeguards"). See generally *Commonwealth* v. *Pelletier*, 449 Mass. 392, 397-398 (2007).

*Conclusion.* We affirm the judgment on the conviction of negligent operation of a motor vehicle. On the count of the complaint alleging OUI, third offense, the underlying conviction of OUI is affirmed, but so much of the judgment as finds the defendant guilty of a third offense is vacated. The sentence on the OUI conviction is vacated and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*