NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11796


COMMONWEALTH  vs.  ERIC A. JEWETT.



Essex.     March 3, 2015. - June 11, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
& Hines, JJ.


Arrest.  Search and Seizure, Arrest, Exigent circumstances,
    Probable cause, Pursuit.  Probable Cause.  Constitutional
    Law, Probable cause.  Motor Vehicle, Operating under the
    influence.



    Complaint received and sworn to in the Newburyport Division
of the District Court Department on February 16, 2010.

    A pretrial motion to suppress evidence was heard by Peter
F. Doyle, J.; a motion for reconsideration was heard by him; and
the case was tried before Michael A. Uhlarik, J.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Todd C. Pomerleau (Chase A. Marshall with him) for the
defendant.
    Philip A. Mallard, Assistant District Attorney, for the
Commonwealth.
    John M. Collins, for Massachusetts Chiefs of Police
Association, Inc., amicus curiae, submitted a brief.

CORDY, J. In this case we consider whether the hot pursuit of a suspect who has fled to a private home and who an officer has probable cause to believe has committed a misdemeanor for which imprisonment is possible, creates a sufficient exigency such that a warrantless arrest is lawful. We conclude that it does in the circumstances of this case.

Background. We summarize the facts as found by the motion judge, and as supplemented by the testimony at the suppression hearing which he credited, see Commonwealth v. Isaiah I., 448 Mass. 334, 337 (2007), S.C., 450 Mass. 818 (2008), reserving certain details for our analysis of the issues raised on appeal.

On February 14, 2010, at approximately midnight, Officer Richard Holcroft[1] of the Merrimac police department was on a routine patrol in a marked police cruiser. While traveling west on East Main Street he observed a male and female walking to a pickup truck in the parking lot of a bar. There were only a few vehicles in the lot and no other vehicles near where the truck was parked. All other businesses in the area were closed.

Shortly thereafter, Holcroft's attention was drawn to a different vehicle, traveling at a high rate of speed in the opposite direction on East Main Street. He reversed direction to pursue this speeding motor vehicle. While passing the bar

---

[1] Officer Richard Holcroft was the only witness to testify at the motion to suppress hearing, and the motion judge credited Holcroft's testimony in his memorandum of decision.

again, Holcroft observed the first vehicle (the truck) make a wide left turn onto East Main Street. The truck pulled out in front of Holcroft's vehicle and, in so doing, crossed the fog line. The truck then moved back into its travel lane, but subsequently crossed the fog line again, swerved over the double yellow lines, and swerved back to the fog line. After observing these three marked lanes violations, Holcroft began to pursue the truck, activating his cruiser's full light bar.

The driver of the truck did not stop or pull over, but began to travel at a markedly slower rate than the forty miles per hour speed limit. Holcroft then turned on his cruiser's siren, in addition to its flashing lights. The truck began to weave within its lane, but the driver neither pulled over nor attempted to stop. In the middle of this pursuit, Holcroft observed the truck nearly strike a parked motor vehicle. Fearing that the driver of the truck posed a danger to the lives of other motorists on the way, Holcroft continued his pursuit of the truck with both his lights and siren activated. The driver subsequently took a wide left turn onto another street, but still failed to stop.

Holcroft radioed his pursuit of the truck into the police station and was informed by the police dispatcher that the truck was registered to the defendant. Holcroft was familiar with the defendant, as he had given him a ride on a prior occasion when

the defendant was highly intoxicated and had previously been called to the defendant's house, along with multiple other officers, to respond to an incident. Moreover, Holcroft was aware that the defendant had been arrested for leaving the scene of an accident after causing property damage.

The defendant continued traveling along several streets before reaching Mountain Avenue. After driving erratically and very slowly (approximately ten to twenty miles per hour) for over one-half mile, the truck turned into an unmarked driveway and stopped short of a garage attached to a home at the end of the driveway. Holcroft stopped part way down the driveway with both his lights and siren activated, got out of his cruiser, ran to the driver's side of the truck, and knocked on the window. At this point, he recognized the driver of the truck as the defendant, and ordered him out of the vehicle. The defendant ignored Holcroft's order and refused even to make eye contact. Holcroft noted that a female passenger was seated in the front of the vehicle.

The garage door at the end of the driveway then began to rise. Holcroft ordered the defendant to stop and step out of the vehicle, but the defendant did not comply, and proceeded to drive the truck into the garage. Holcroft followed the truck on foot. The defendant drove his vehicle as far into the garage as possible, and pressed a button on a remote control inside his

truck, causing the garage door to close slowly. In response, Holcroft wedged a nearby ice pick under the garage door to prevent it from closing. He then entered the defendant's garage and approached the driver's side door of the truck. Holcroft again ordered the defendant out of the vehicle. At this point, the female passenger got out of the truck and entered the basement of the home through a doorway connecting the garage to the house. The defendant, continuing to disobey Holcroft, slid from the driver's seat to the passenger's seat and began to get out by the passenger's side door. Holcroft proceeded around the back of the vehicle with his baton drawn, ordered the defendant to turn around, and informed him that he was under arrest.

The defendant continued to ignore Holcroft's commands and instead made a forward motion towards him. Holcroft smelled an odor of alcohol coming from the defendant, and observed that his eyes were glassy and bloodshot, his speech was thick and slurred, and he was very unsteady on his feet. Holcroft cautioned the defendant that if he did not comply and desist with his forward movements, Holcroft would spray him with pepper spray. The defendant continued toward Holcroft. After shoving the defendant away twice, Holcroft sprayed the defendant once in the face with pepper spray. The defendant then turned and stumbled through the doorway into the basement of the home.

After a brief struggle at the basement door, the defendant was able to shut the door, leaving Holcroft behind in his garage.

Holcroft drew his service weapon and followed after the defendant. The defendant left his house through a back door in an attempt to flee and subsequently was apprehended in the backyard when police backup arrived.

Procedural history. On February 16, 2010, a criminal complaint issued in the Newburyport Division of the District Court Department, charging the defendant with operating a vehicle while under the influence of liquor (OUI), third offense, in violation of G. L. c. 90, § 24 (1) (a) (1); resisting arrest, in violation of G. L. c. 268, § 32B; reckless operation of a motor vehicle, in violation of G. L. c. 90, § 24 (2) (a); failure to stop for police, in violation of G. L. c. 90, § 25; and a marked lanes violation, in violation of G. L. c. 89, § 4A. Prior to trial, the defendant filed a motion to suppress, contending that Holcroft's entry into his garage constituted an unconstitutional search and seizure. After an evidentiary hearing, the motion judge denied the defendant's motion based on the existence of probable cause and several exigent circumstances, including hot pursuit, risk of flight, and dissipation of evidence.[2] The defendant subsequently moved

---

[2] On appeal we do not consider whether the warrantless entry was permissible to prevent the dissipation of evidence, as the

for reconsideration, and the judge amended three specific findings of fact in an amended decision issued in December, 2010.

A two-day jury trial commenced on March 21, 2011. At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty, which was denied as to all counts except reckless operation of a motor vehicle. The defendant subsequently moved for a required finding of not guilty at the close of all the evidence. This motion was denied and the jury found the defendant guilty on all the remaining counts.

The following day, after a bench trial, the judge found that the defendant had been convicted of OUI on two prior occasions, making the instant charge his third offense and therefore a felony. The defendant filed a timely notice of appeal in April, 2011, and we transferred the defendant's appeal to this court on our own motion.

Discussion. On appeal, the defendant argues that the motion to suppress evidence was wrongly denied, and that the evidence was insufficient to prove both that he was under the influence of liquor when arrested and that he had two prior OUI convictions. We address each argument in turn.

_____

Commonwealth concedes that the facts here do not present a sufficient basis for such a showing.

1. Suppression motion. When reviewing a motion to suppress, "we accept the judge's subsidiary findings of fact absent clear error," but "independently review the judge's ultimate findings and conclusions of law." Commonwealth v. Tyree, 455 Mass. 676, 682 (2010), citing Commonwealth v. Colon, 449 Mass. 207, 214 (2007), cert. denied, 552 U.S. 1079 (2007).

"Warrantless entries into the home are prohibited by the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights absent either probable cause and exigent circumstances, or consent." Commonwealth v. Rogers, 444 Mass. 234, 236 (2005). "A variety of circumstances may give rise to an exigency sufficient to justify a warrantless search, including law enforcement's need to . . . engage in 'hot pursuit' of a fleeing suspect." Missouri v. McNeely, 133 S. Ct. 1552, 1558 (2013), citing United States v. Santana, 427 U.S. 38, 42-43 (1976).[3] See Commonwealth v. Paniaqua, 413 Mass. 796, 797-798 (1992). It is the Commonwealth's "heavy burden" to establish both the requisite probable cause and exigent circumstances. See Tyree, 455 Mass.

_____

[3] Other exigencies that may justify a warrantless search are law enforcement's need to provide emergency assistance to an occupant of a home, see Michigan v. Fisher, 558 U.S. 45, 47 (2009); restrict the risk of a suspect's flight, see Commonwealth v. Forde, 367 Mass. 798, 807 (1975); and prevent the imminent destruction of evidence, see Missouri v. McNeely, 133 S. Ct. 1552, 1559 (2013). See Commonwealth v. Skea, 18 Mass. App. Ct. 685, 693 n.12 (1984) (listing warrant requirement exceptions).

at 684. When asserting an exigency exception, the Commonwealth must show that it was impracticable for the police to obtain a warrant, "and the standards as to exigency are strict" (citation omitted). Id.

a. Probable cause. Probable cause to arrest "exists, where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." Commonwealth v. Franco, 419 Mass. 635, 639 (1995), quoting Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992). It "requires more than mere suspicion but something less than evidence sufficient to warrant a conviction." Commonwealth v. Hason, 387 Mass. 169, 174 (1982), quoting Brinegar v. United States, 338 U.S. 160, 175-176 (1949). "In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Id., quoting Brinegar, 338 U.S. at 175. Accordingly, "an objective test is used to determine whether probable cause exists." Franco, 419 Mass. at 639, citing Hason, 387 Mass. at 175.

Based on the facts and circumstances known to Holcroft at the time of the warrantless entry, we conclude that he had probable cause to lawfully arrest the defendant for at least two

offenses, one of which was the jailable misdemeanor of reckless operation.[4]  See G. L. c. 90, § 24 (2) (a).  Although this crime does not fall within the ambit of G. L. c. 90, § 21, regarding arrests in traffic cases, common law permits a police officer to arrest an individual without a warrant for a misdemeanor if the individual's actions "(1) [constitute] a breach of the peace, (2) [are] committed in the presence or view of the officer, . . . and (3) [are] still continuing at the time of the arrest or are only interrupted so that the offense and the arrest form parts of one transaction."  Commonwealth v. Howe, 405 Mass. 332,

_____

[4] The motion judge found that, at the time of the warrantless entry, there was probable cause to arrest the defendant for "failure to stop for a police officer, reckless or negligent operation of a motor vehicle, and operating a motor vehicle while under the influence of alcohol."  Although Holcroft arguably had reasonable suspicion to stop the defendant for an OUI, without having had the opportunity to interact with him or conduct a threshold inquiry, it is less certain that at the time of the warrantless entry Holcroft's observations amounted to probable cause.  Compare Commonwealth v. Smigliano, 427 Mass. 490, 491-492 (1998) (officer had reasonable suspicion to believe defendant was operating vehicle while under influence where officer observed vehicle swerve and almost hit parked motor vehicles), with Commonwealth v. O'Hara, 30 Mass. App. Ct. 608, 609-610 (1991) (defendant's erratic driving sufficient to provide officer with "some reason to believe" defendant was operating vehicle while under influence, but arrest justified only after officer made additional observations during stop).  See Commonwealth v. McGrail, 419 Mass. 774, 775-776 (1995), overruled on another ground by Commonwealth v. Blais, 428 Mass. 294 (1998) (probable cause for OUI where, in addition to seeing erratic driving, officer observed obvious signs of intoxication including slurred speech, odor of alcohol on breath, and bloodshot eyes).  In any event, where there was plainly probable cause to arrest the defendant for reckless operation, we need not decide this point.

334 (1989), quoting Commonwealth v. Gorman, 288 Mass. 294, 296-297 (1934). "To find a breach of the peace . . . an act must at least threaten to have some disturbing effect on the public." Commonwealth v. Baez, 42 Mass. App. Ct. 565, 570 (1997).

Each of these requirements was present in the instant case. The defendant's erratic operation and near-collision clearly occurred in the presence of Holcroft and formed part of the same transaction as the defendant's ultimate arrest. We have little doubt that Holcroft had the authority to arrest the defendant on the ground that erratic driving through public streets, which nearly results in a collision with a parked motor vehicle, involves a breach of the peace. This is especially so given that the defendant's refusal to heed the lights and sirens of law enforcement, resulting in a chase through a residential area, undoubtedly created the potential for a disturbing effect on the public. Compare Commonwealth v. Cavanaugh, 366 Mass. 277, 280-281 (1974) (chase through city streets involved breach of peace), with Baez, 42 Mass. App. Ct. at 566-570 (1997) (civil motor vehicle infraction of defective headlight did not constitute breach of peace).

In order to establish guilt under the reckless operation statute, "the Commonwealth must prove that the defendant

operated a motor vehicle negligently (or recklessly)[5] so as to endanger the lives or safety of the public 'upon any way or in any place to which the public has a right of access.'" Commonwealth v. Ferreira, 70 Mass. App. Ct. 32, 34 (2007), quoting G. L. c. 90, § 24 (2) (a). "The statute only requires proof that the defendant's conduct might have endangered the safety of the public, not that it in fact did." Id. at 35. See Commonwealth v. Constantino, 443 Mass. 521, 526-527 (2005) ("person may operate a vehicle in such a way that would endanger the public although no other person is on the street"). Moreover, "it is not the duration of negligent operation or the proximity of the public but 'the operation of the vehicle itself that is the crime.'" Ferreira, supra at 35, quoting Constantino, supra at 526.

Here, there was an ample basis for a probable cause determination of negligent operation. Though the defendant was not speeding,[6] he crossed over the fog line three times and the double yellow lines once, made wide turns, weaved within his

---

[5] In Commonwealth v. Jones, 382 Mass. 387, 392 (1981), we recognized "that by custom and usage the element of 'recklessness' has been of little or no significance in the application of the operating to endanger statute" and, therefore, "the statutory word 'recklessly' seems to be surplusage."

[6] See Commonwealth v. Ferreira, 70 Mass. App. Ct. 32, 35 (2007) ("lack of evidence of continuing excessive speed . . . is only one factor to be considered when determining whether the lives of the public could have been endangered").

lane, refused to heed Holcroft's persistent demand to pull over, and nearly hit a parked automobile while deliberately attempting to evade law enforcement.  These facts demonstrate in several ways how the defendant's behavior might have endangered the lives of the public, thereby establishing probable cause for a negligent or reckless operation charge.  See, e.g., Commonwealth v. Johnson, 413 Mass. 598, 601 (1992) (probable cause for operating to endanger where speeding vehicle attempted to evade police and almost hit unmarked vehicle); Ferreira, 70 Mass. App. Ct. at 33-36 (operating to endanger where, despite no pedestrians nearby, defendant accelerated in manner that caused tires to spin, car to "fishtail," and screeching noise); Commonwealth v. Labelle, 67 Mass. App. Ct. 698, 700-701 (2006) (operating to endanger where defendant sped through yellow light at intersection during busy time of day); Commonwealth v. Daley, 66 Mass. App. Ct. 254, 255-256 (2006) (operating to endanger where defendant erratically crossed lanes, straddled breakdown lane, and used wipers on clear night).

b.  Exigent circumstances.  As noted above, hot pursuit of a fleeing suspect is a well-recognized exception to the warrant requirement.  See Santana, 427 U.S. at 41-43 (warrantless entry permissible under doctrine of hot pursuit where defendant fled inside home to avoid arrest for heroin possession with intent to distribute); Kentucky v. King, 131 S. Ct. 1849, 1856 (2011).

This exception effectuates the principle that "a suspect may not defeat an arrest which has been set in motion in a public place . . . by the expedient of escaping to a private place." Santana, 427 U.S. at 43. Hot pursuit does not require a high speed race or a trail of police cruisers in fast pursuit of a suspect. See id. ("it need not be an extended hue and cry in and about [the] public streets" [quotations omitted]). Rather, it merely means "some sort of a chase." Id.

Although it is well settled that a State may develop its own law of search and seizure so long as it does not run afoul of the prohibitions of the Fourth Amendment, see Commonwealth v. Matthews, 355 Mass. 378, 380-381 (1969), "[F]ederal and [S]tate courts nationwide are sharply divided on the question whether an officer with probable cause to arrest a suspect for a misdemeanor may enter a home without a warrant while in hot pursuit of that suspect." Stanton v. Sims, 134 S. Ct. 3, 5 (2013). The defendant argues that the hot pursuit exception does not apply to "minor crimes," and because the crimes he was suspected of committing at the time of the warrantless entry were not felonies, he contends that Holcroft's entry into his garage was not permissible. We find this argument unpersuasive.

The hot pursuit exception has never explicitly been limited to felonies under either the Fourth Amendment or art. 14. See Stanton, 134 S. Ct. at 6 ("though Santana [427 U.S.] involved a

felony suspect," Supreme Court "did not expressly limit [the] holding based on that fact").  The defendant grounds much of his argument in the subsequent United States Supreme Court case of Welsh v. Wisconsin, 466 U.S. 740, 746 n.6, 754 (1984) (defendant arrested for OUI but no incarceration possible for first OUI offense under Wisconsin law ), which explained that an "extremely minor" offense cannot give rise to a constitutional exigency for a warrantless entry.  Welsh is readily distinguishable from the instant case for at least two reasons.  First, the Supreme Court explicitly noted that the doctrine of hot pursuit did not apply as "there was no immediate or continuous pursuit of the petitioner from the scene of a crime."  Id. at 753.  See Commonwealth v. DiGeronimo, 38 Mass. App. Ct. 714 (1995) (hot pursuit not implicated).  Second, although undoubtedly "more than a minor crime must be involved to justify the warrantless intrusion into a private residence," Commonwealth v. Kirschner, 67 Mass. App. Ct. 836, 842-843 (2006), Welsh did not conclude that all misdemeanors are minor offenses, but rather only that nonjailable offenses are considered such.  See Welsh, 466 U.S. at 754.

Therefore, Welsh is not inconsistent with Santana.[7]  Taken together, these cases stand for the proposition that police may

---

[7] An errant string cite in Welsh v. Wisconsin, 466 U.S. 740, 750 (1984) incorrectly characterized the holding of United

not make a hot pursuit warrantless entry into a residence of a person who is suspected of committing only a minor offense. Felonies, such as the one committed in Santana, 427 U.S. at 41-43, are not minor offenses, but nonjailable misdemeanors, such as the one at issue in Welsh, are properly considered to be minor. See Welsh, 466 U.S. at 754. See also Kirschner, 67 Mass. App. Ct. at 842-843 (hot pursuit not implicated and warrantless entry impermissible where crime was possession of fireworks punishable only by fine); Commonwealth v. Kiser, 48 Mass. App. Ct. 647, 649-651 (2000) (same, for nonjailable "extremely minor" offense of playing loud music).

Here, however, the defendant was not suspected of committing a minor offense, but one which was punishable by imprisonment of up to two years. The defendant incorrectly cites Welsh and Kirschner for the proposition that every misdemeanor necessarily falls into the category of "minor offense," and therefore may never form the basis of a hot pursuit exigency. Neither case so held. The prohibition in Welsh of warrantless entry for a minor offense did not embrace all misdemeanors. See Welsh, 466 U.S. at 761 (White, J., dissenting) (noting majority did not draw "a bright-line distinction between felonies and other crimes"); Gasset v.

States v. Santana, 427 U.S. 38, 42-43 (1976), as permitting "hot pursuit of a fleeing felon," rather than a fleeing "suspect" (emphases added).

State, 490 So. 2d 97, 98-99 (Fla. Dist. Ct. App. 1986). In Joyce v. Tewksbury, 112 F.3d 19, 22 (1st Cir. 1997), the United States Court of Appeals for the First Circuit emphasized the very limited sweep of Welsh in stating that "the fact that Massachusetts classifies the alleged violation here as a misdemeanor does not reduce it to a 'minor offense.'" Moreover, in Stanton, 134 S. Ct. at 6, the Supreme Court clarified that Welsh did not hold that a "warrantless entry to arrest a misdemeanant is never justified," but rather that such entries "should be rare." We conclude that hot pursuit of an individual suspected of committing a jailable misdemeanor such as in this case is permissible.

Other States have similarly recognized that jailable misdemeanors are not minor offenses under Welsh. See, e.g., People v. Thompson, 38 Cal. 4th 811, 821, cert. denied, 549 U.S. 980 (2006) (jailable misdemeanor "not an 'extremely minor' offense within the meaning of Welsh"); Peoples v. Wehmas, 246 P.3d 642, 648 (Colo. 2011) (jailable misdemeanor "sufficiently grave offense such that warrantless home entry may be valid"); Dyer v. State, 680 So. 2d 612, 613 (Fla. Dist. Ct. App. 1996) (jailable misdemeanor is "classified as a much more serious offense than [the one] in Welsh"), and that an officer may make a warrantless entry to arrest when such crimes are committed in their presence and they remain in hot pursuit of the suspect.

See, e.g., Gasset, 490 So. 2d at 98-99 (warrantless entry justified where police pursued speeding motorist directly into garage, as offense was punishable by imprisonment and enforcement of serious traffic violations "is not a game where law enforcement officers are 'it' and one is 'safe' if one reaches 'home' before being tagged"); State v. Keenan, 325 P.3d 1192, 1200, 1202 (Kan. Ct. App. 2014) (officer in hot pursuit of person suspected of jailable misdemeanor may make warrantless entry into suspect's home); State v. Paul, 548 N.W.2d 260, 264-268 (Minn. 1996) (same).

Establishing a bright-line rule prohibiting the warrantless entry of a home when the underlying offense is of lesser magnitude than a felony would send an unacceptable message to the defendant who "drinks and drives that a hot pursuit or an arrest set in motion can be thwarted by beating police to one's door." Paul, 548 N.W.2d at 268. We decline to adopt such a rule, which runs directly counter to sound public policy. "Law enforcement is not a child's game of prisoners base, or a contest, with apprehension and conviction depending upon whether the officer or defendant is the fleetest of foot." State v. Ricci, 144 N.H. 241, 245 (1999), quoting State v. Blake, 468 N.E.2d 548, 553 (Ind. Ct. App. 1984). Moreover, such a categorical distinction would arbitrarily permit perpetrators of serious misdemeanors "to avoid punishment merely because of how

the legislature had labelled an infraction." Paul, 548 N.W.2d at 267. Rather, limiting the hot pursuit exception to felonies and jailable misdemeanors appropriately balances the constitutional protections of both the Fourth Amendment and art. 14 with society's interest in apprehending individuals suspected of serious crimes.

Accordingly, Holcroft's actions in entering the defendant's garage to effectuate the arrest were lawful. At the time of the warrantless entry he was clearly in hot pursuit of the defendant and the defendant was aware of this. Although Holcroft attempted to effectuate a threshold inquiry and set an arrest in motion for a jailable misdemeanor in a public setting multiple times, the defendant did not comply with his demands and fled to his home in an attempt to frustrate the arrest.[8]

---

[8] The defendant also attempts to argue that hot pursuit is not an exigency unto itself where the underlying crime is not felonious, but rather additional factors, such as the crime being violent or the suspect being armed, must be satisfied in order to justify a warrantless entry. We disagree with this contention. The Supreme Court in Santana "did not refer to hot pursuit as only one factor among others." People v. Wear, 371 Ill. App. 3d 517, 537 (2007), aff'd, 229 Ill. 2d 545 (2008). Rather, "[m]ost courts appear to take Santana's holding at face value, treating hot pursuit as an exception unto itself rather than as just another factor." Id. See, e.g., People v. Lloyd, 216 Cal. App. 3d 1425, 1429 (1989), cert. denied, 497 U.S. 1026 (1990) ("officer's 'hot pursuit' into the house to prevent the suspect from frustrating the arrest which had been set in motion in a public place constitutes a proper exception to the warrant requirement"); State v. Blake, 468 N.E.2d 548, 553 (Ind. Ct. App. 1984) ("immediate and continuous pursuit from the scene of the crime formed the exigent circumstance"); State v. Bell, 28

2. <u>Sufficiency of the evidence</u>. The defendant contends that the evidence was insufficient to establish both the underlying OUI charge as well as his two prior convictions. When reviewing a claim as to the sufficiency of the evidence we consider "whether the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged" (citation omitted). <u>Commonwealth</u> v. <u>Latimore</u>, 378 Mass. 671, 676-677 (1979). "Additionally, the evidence and the inferences permitted to be drawn therefrom must be of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of (guilt) beyond a reasonable doubt" (quotation and citation omitted). <u>Id</u>. at 677.

a. <u>Underlying OUI</u>. In order to be convicted of an OUI, the Commonwealth must prove beyond a reasonable doubt that the defendant (1) operated a motor vehicle, (2) on a public way, (3) while under the influence of intoxicating liquor. G. L. c. 90,

---

So. 3d 502, 508-510 (La. Ct. App. 2009) (recognizing exigent circumstances inherent in hot pursuit); <u>Winter</u> v. <u>State</u>, 902 S.W.2d 571, 573 (Tex. Ct. App. 1995) ("Court has found that exigent circumstances exist when the police are in 'hot pursuit' of a suspect"). Essentially, hot pursuit, in and of itself, is sufficient to justify a warrantless entry. <u>Santana</u>, 427 U.S. at 42-43. See <u>Commonwealth</u> v. <u>Molina</u>, 439 Mass. 206, 210-211 (2003) (intimating that no warrant needed if "officers were in hot pursuit of a fleeing suspect in the immediate aftermath of a crime" without mention of additional exigencies).

§ 24 (1) (a) (1).  The defendant and the Commonwealth stipulated that the defendant was operating a motor vehicle and that he was operating it on a public way.  To establish that the defendant was under the influence, "[t]he Commonwealth need not prove that the defendant actually drove in an unsafe or erratic manner, but it must prove a diminished capacity to operate safely" (emphasis omitted).  Commonwealth v. Connolly, 394 Mass. 169, 173 (1985).

Here, the defendant bore many of the classic indicia of impairment.  He was seen departing from a bar late in the evening, and, once in his vehicle, he drove erratically, weaved and crossed lane markings, made overly wide turns, nearly struck a parked vehicle, and refused to comply with police demands to stop.  See Commonwealth v. Sauer, 50 Mass. App. Ct. 299, 303 (2000) (defendant's visit to bar and erratic driving evidence to support OUI conviction).  Additionally, given that Holcroft's warrantless entry was lawful, his observations of the defendant once inside the garage are admissible and the Commonwealth appropriately relied on them at trial.  Holcroft testified that the defendant was unsteady on his feet, had bloodshot and glassy eyes, smelled of alcohol, and slurred his words.  See Commonwealth v. Bryer, 398 Mass. 9, 10-11 (1986) (unsteadiness and odor of alcohol are factors that support inference of diminished capacity to operate safely due to intoxication); Commonwealth v. Lavendier, 79 Mass. App. Ct. 501, 506-507 (2011)

(poor balance and glassy, bloodshot eyes are evidence of intoxication); Sauer, supra (unsteadiness is evidence of intoxication); Commonwealth v. Shabo, 47 Mass. App. Ct. 923, 924 (1999) (smell of alcohol and slurred speech support finding of intoxication).

Additionally, after the defendant fled his home he attempted to hide behind a small tree and fought with apprehending officers (and then fell asleep and snored during booking). See Commonwealth v. Sudderth, 37 Mass. App. Ct. 317, 318, 321 (1994) (belligerence is evidence of intoxication). This evidence was sufficient to withstand a motion for a required finding of not guilty and adequately supports a determination that the defendant was under the influence of alcohol at the time he operated his vehicle.

b. Third offense. The defendant contends that the two docket sheets introduced in evidence were insufficient to prove beyond a reasonable doubt that the defendant was convicted of two prior OUI offenses. Thus, the defendant claims that there was insufficient evidence to sustain his conviction of a third OUI offense. For the reasons stated below, we disagree.

The sufficiency of docket sheets as evidence of prior convictions is well settled in the Commonwealth, see, e.g., G. L. c. 90, § 24 (4); Commonwealth v. Dussault, 71 Mass. App. Ct. 542, 546 (2008) (certified copies of original court papers

prima facie evidence that defendant previously convicted). Although docket sheets that simply identify a name are not sufficient to prove that past convictions are those of a defendant, see Commonwealth v. Koney, 421 Mass. 295, 302 (1995), documents that "include more identifying information than merely the offender's name" (citation omitted) can be sufficient to satisfy the Commonwealth's burden. Commonwealth v. Gonsalves, 74 Mass. App. Ct. 910, 912 (2009). See, e.g., Commonwealth v. Bowden, 447 Mass. 593, 602 (2006); Dussault, supra at 547 (records matching defendant's full name, date of birth, town of residence, and two addresses associated with defendant's name, coupled with judicial notice of unusual surname, sufficient).

The Commonwealth advances an argument only for the sufficiency of the docket sheet documenting the second conviction, as that is all that is necessary to establish that the present conviction was the defendant's third.[9] See Bowden, 447 Mass. at 599 ("judgment of conviction for a third offense may appropriately be relied on to establish culpability for the first two offenses."). The defendant claims that the second docket sheet only reflects his name, date of birth, and an address that is no longer his place of residence, and, relying

_____

[9] The defendant points out that the person named on the criminal docket for the second offense received a first offense disposition. However, the docket shows the defendant was charged with OUI, second offense, and the attached order of probation conditions lists a disposition of "OUI 2."

in part on an unpublished opinion of the Appeals Court, argues that this information is insufficient.  We disagree.

The docket sheets for the second offense bore the same first name, unusual surname, middle initial, and date of birth as the defendant's driver's license.  See Dussault, 71 Mass. App. Ct. at 547.  Although the address listed on the docket was a different local address than the one appearing on the defendant's license, the certified copy of the "Order of Probation Conditions" for this offense was signed the same day as the conviction and identified the defendant by the address that appeared on his license (and matched all the other personal information from the criminal docket).  Accordingly, the complete set of records for the OUI second offense conviction matched the defendant's full name, address, and date of birth. See Gonsalves, 74 Mass. App. Ct. at 912; Dussault, supra at 547. Viewing such evidence in the light most favorable to the Commonwealth, we are persuaded that it provides a satisfactory connection between the defendant and the individual who was convicted of OUI, second offense, and is therefore sufficient to uphold the defendant's conviction of OUI, third offense.

Judgments affirmed.