454 So.2d 49 (1984)
Walter Thomas VAN ALLEN, Appellant,
v.
STATE of Florida, Appellee.
No. 83-1456.
District Court of Appeal of Florida, Fourth District.
August 8, 1984.
Rehearing Denied September 12, 1984.
H. Dohn Williams, Jr., of Varon, Bogenschutz, Williams & Gulkin, P.A., Hollywood, for appellant.
*50 Jim Smith, Atty. Gen., Tallahassee, and Richard G. Bartmon, Asst. Atty. Gen., West Palm Beach, for appellee.
HERSEY, Judge.
At issue in this appeal is the validity of a search where the law enforcement officers failed to comply with the "knock and announce" requirement.
The statutory provision applicable here is Section 933.09, Florida Statutes (1983), which relates to searches. That section provides:
The officer may break open any outer door, inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if after due notice of his authority and purpose he is refused admittance to said house or access to anything therein.
The "knock and announce" rule is more commonly encountered in the application of Section 901.19(1), Florida Statutes (1983), governing official entries for the purpose of making an arrest. Both statutes impose the same salutary requirement of knock and announce, and both are grounded in the same policy considerations. Thus, cases under one statute are "persuasive authority" for application of the other. See State v. Collier, 270 So.2d 451 (Fla.4th DCA 1972).
The historical reasons for a knock and announce rule were discussed by the Supreme Court of Florida in Benefield v. State, 160 So.2d 706 (Fla. 1964). In that case Justice Terrell, for the majority, explained.
Entering one's home without legal authority and neglect to give the occupants notice have been condemned by the law and the common custom of this country and England from time immemorial. It was condemned by the yearbooks of Edward IV, before the discovery of this country by Columbus. Judge Prettyman for the Court of Appeals in Accarino v. United States, 85 U.S.App.D.C. 394, 179 F.2d 456, 465, discussed the history and reasons for it. See also 22 Mich.L.Rev. 541, 673, 798, "Arrest Without a Warrant," by Wilgus. William Pitt categorized a man's home as his castle. Paraphrasing one of his speeches in which he apostrophized the home, it was said in about this fashion: The poorest pioneer in his log cabin may bid defiance to the forces of the crown. It may be located so far in the backwoods that the sun rises this side of it; it may be unsteady; the roof may leak; the wind may blow through it; the cold may penetrate it and his dog may sleep beneath the front steps, but it is his castle that the king may not enter and his men dare not cross the threshold without his permission.
This sentiment has moulded our concept of the home as one's castle as well as the law to protect it. The law forbids the law enforcement officers of the state or the United States to enter before knocking at the door, giving his name and the purpose of his call. There is nothing more terrifying to the occupants than to be suddenly confronted in the privacy of their home by a police officer decorated with guns and the insignia of his office. This is why the law protects its entrance so rigidly. The law so interpreted is nothing more than another expression of the moral emphasis placed on liberty and the sanctity of the home in a free country. Liberty without virtue is much like a spirited horse, apt to go beserk on slight provocation if not restrained by a severe bit.
Id. at 709.
The court in Benefield next proceeded to analyze the statute against a backdrop of common law applications:
As we interpret the common law authorities in relation to § 901.19(1), Florida Statutes, F.S.A., we conclude that even if probable cause exists for the arrest of a person, our statute is violated by an unannounced intrusion in the form of a breaking and entering any building, including a private home, except (1) where the person within already knows of the officer's authority and purpose; (2) where the officers are justified in the belief that the persons within are in imminent *51 peril of bodily harm; (3) if the officer's peril would have been increased had he demanded entrance and stated the purpose, or (4) where those within made aware of the presence of someone outside are then engaged in activities which justify the officers in the belief that an escape or destruction of evidence is being attempted. Time and experience will no doubt suggest other exceptions, but when the facts of this case are measured against the statutory criteria and its exceptions, it is clear that the unannounced entry of the officers in this case violated the statute and vitiated the arrest made pursuant to probable cause without warrant.
160 So.2d at 710. See State v. Drowne, 436 So.2d 916 (Fla. 4th DCA), pet. for review denied, 441 So.2d 633 (Fla. 1983), where we had occasion to apply the statute in an appropriate setting.
In the present case the police officers had been told by appellant that he and another individual would be out of town. This information coincided with the statement of a confidential informant that appellant and another person frequently went to Atlanta on the weekends to sell stolen property. The police officers obtained a search warrant and went to the premises with reasonable cause to believe they were unoccupied. An officer, when later asked how entry was gained, testified: "[t]here was one jalousie out beside the door, and I hollered in ... is anybody home? I didn't say `police' or anything like that, but I said, `anybody home?' in a loud enough voice that if there had been anybody in there, they would have heard me." The officer is to be commended for his candor, but the fact remains this was a clear violation of the knock and announce requirement. The question is, does it matter that the premises were unoccupied.
In Kistner v. State, 379 So.2d 128 (Fla. 1st DCA 1979), the appellate court rejected a contention, similar to the one the state makes here, that it was futile to knock and announce where it reasonably appeared no one was home to hear the call. The difference between that case and this one is that in Kistner the officers were mistaken in their belief. The premises were in fact occupied. We are thus required to decide whether this is a difference without legal distinction. In both cases the officers reasonably believed the premises to be unoccupied. In Kistner they were wrong; here they were right.
Benefield points out four exceptions to the knock and announce rule, the first of which is that knock and announce is unnecessary "where the person within already knows of the officer's authority and purpose." 160 So.2d at 710. Thus, even though the premises be occupied, knock and announce may be excused based upon the subjective state of mind of the occupant. If this is so, then logic and common sense would seem to indicate that announcing to a non-occupant is as fruitless as announcing to an occupant already possessed of the facts. Application of this rationale can do no harm to the goals of knock and announce if strictly limited to unoccupied premises. Thus, regardless of what the officers reasonably believe (and assuming none of the Benefield exceptions apply), if the premises are actually occupied there is a violation under Kistner. On the other hand, if the officers are correct and the premises are unoccupied there is no violation (if our rationale here withstands subsequent scrutiny).
We therefore hold that no violation of the knock and announce rule occurs where law enforcement officers, reasonably believing premises to be unoccupied, otherwise lawfully intrude upon premises without announcing their authority and purpose, when in fact the premises are unoccupied.
Appellant's other points on appeal are without merit. We therefore affirm.
AFFIRMED.
GLICKSTEIN and DELL, JJ., concur.