SCHWARTZ, Senior Judge.
The state appeals from an order in a prosecution for possession of cannabis and of a firearm by a convicted felon suppressing the defendant’s inculpatory statement and a weapon and drugs found in his apartment. The trial court concluded that the entry into the apartment which preceded the seizure and statement was unjustified. We reverse.
I
The facts are undisputed. During an unrelated field investigation at around midnight, two Miami police officers noticed two men outside an apartment complex. One of them, Brown, had an assault-type rifle in his right hand by his side and was walking to a vehicle with its engine running but the lights turned off. Disregarding police orders to stop, the men ran into an apartment which turned out to be Brown’s. The officers followed and, with the front door still open, entered the apartment where they found a rifle and over twenty grams of marijuana, which the defendant admitted were his.
The trial court granted a defense motion to suppress, concluding in part that Brown’s action “would have been a misdemeanor, and the officer cannot follow him into the home for that purpose.” We conclude however that (1) no constitutional violation occurred; and (2) Brown’s reliance on the knock and announce statute, section 901.19(1), Florida Statutes (2007), is misplaced.
II
Warrantless searches or arrests in constitutionally protected areas, particularly one’s home, are per se unreasonable unless they fall within one of the established exceptions to the warrant requirement. See Shapiro v. State, 390 So.2d 344 (Fla.1980); Morales v. State, 407 So.2d 321, 324-25 (Fla. 3d DCA 1981); Adams v. State, 240 So.2d 529 (Fla. 3d DCA 1970). One of these is the existence of “exigent circumstances,”[1] which in turn include those which arise when police are conducting lawful “hot pursuits.” See Alvarez v. State, 573 So.2d 400, 401 (Fla. 3d DCA *772 1991); see also Georgia v. Randolph, 547 U.S. 103, 117 n. 6, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) (listing “hot pursuit,” “protecting the safety of ... police officers,” “imminent destruction [of a] building,” “likelihood that [a] suspect will imminently flee,” and “a fairly perceived need to act on the spot to preserve evidence” as exigent circumstances that might justify a warrantless search of a residence); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); Lee v. State, 856 So.2d 1133, 1136 (Fla. 1st DCA 2003); Gnann v. State, 662 So.2d 406, 407 (Fla. 2d DCA 1995). See generally D. Gilsinger, Annotation, When is Warrantless Entry of House or Other Building Justified Under “Hot Pursuit” Doctrine, 17 A.L.R. 6th 327 (2006). That doctrine applies to this case.
It is true that, as the trial court found, the offenses observed by the officers, possession of an assault-type rifle, and fleeing from an officer were “only” misdemeanors. See § 775.082(4)(b), Fla. Stat. (2007); § 790.25(3), Florida Statutes (2007); § 790.053(3), Fla. Stat. (2007); see also § 775.082(4)(a), Fla. Stat. (2007); § 843.02, Fla. Stat. (2007). In Ulysse v. State, 899 So.2d 1233, 1234 (Fla. 3d DCA 2005), however, this Court squarely held that the hot pursuit exception to the warrant requirement is nonetheless fully applicable.
The defendant suggests that the hot pursuit exception to the warrant requirement of the Fourth Amendment does not apply if the officers are pursuing a fleeing misdemeanant. That point has been resolved in this district adversely to the defendant’s position. See Gasset v. State, 490 So.2d 97 (Fla. 3d DCA 1986). Hot pursuit of a fleeing misdemeanant is permissible where the misdemeanor is punishable by a jail sentence. Id. at 98.
Ulysse, 899 So.2d at 1234. Indeed, section 901.15, Florida Statutes (2008) specifically provides:
A law enforcement officer may arrest a person without a warrant when: (1) The person has committed a felony or misdemeanor or violated a municipal or county ordinance in the presence of the officer. An arrest for the commission of a misdemeanor or the violation of a municipal or county ordinance shall be made immediately or in fresh pursuit, [e.s.]
See generally Welsh v. Wisconsin, 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (observing that hot pursuit is the immediate or continuous pursuit of the suspect from the scene of a crime).
In Ulysse, as officers pursued a stolen vehicle, its passenger fled on foot, running into the defendant’s home. The officers followed into the house, where they spotted narcotics and a firearm. Ulysse was charged with possession and thereafter argued suppression of the evidence was required. We disagreed, observing that “on the facts here, a reasonable officer would have probable cause to believe that the passenger had participated in the theft of the car ... or at the least, trespass in a conveyance” and “the officers were justifiably in hot pursuit of the passenger who ran into [Ulysse’s] house” and the evidence was therefore admissible. Id. at 1234.
Similarly, in Gasset, officers observed the defendant driving erratically and a high-speed chase ensued. He drove onto his property and into an attached garage, with the officers immediately behind him. As Gasset exited his vehicle, the officers entered the garage and arrested him, ultimately charging him with DUI. We decided that the officers had probable cause to make a warrantless arrest and could enter the garage because:
Gasset waived any' expectation of privacy he may have had in his garage by *773 engaging in the high-speed chase previously described and leading the officers directly to the place of his arrest. The enforcement of our criminal laws, including serious traffic violations, is not a game where law enforcement officers are “it” and one is “safe” if one reaches “home” before being tagged. Accord State v. Blake, 468 N.E.2d 548, 553 (Ind.Ct.App.1984). “[A] suspect may not defeat an arrest which has been set in motion in a public place ... by the expedient of escaping to a private place.” United States v. Santana, 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300, 306 (1976) (act of retreating into house cannot thwart an otherwise proper arrest); see also Bey v. State, 355 So.2d 850 (Fla. 3d DCA 1978).
Gasset, 490 So.2d at 98-99 (footnote omitted).
The time of day, the presence of an assault-type rifle, the disregarded commands to stop, and the possible threat of an uncooperative suspect with a weapon, were overwhelming reasons to follow Brown into the home. In accordance with Ulysse and Gasset, we therefore find that no constitutional violation was involved in this case.
Ill
Brown’s argument for affirmance is based on the “knock and announce” statute, § 901.19(1), Fla. Stat. (2007)[2], as interpreted in Ortiz v. State, 600 So.2d 530 (Fla. 3d DCA 1992). For several reasons we reject this position.
1. In the first place, this case is decisively distinguishable from Ortiz. There, officers had received an anonymous tip that illicit activity was taking place in an apartment complex. After watching the defendant for thirty minutes, officers decided to question him. When Ortiz saw the officers approaching, he ran into an apartment, dropping a misdemeanor amount of marijuana — conduct unrelated to the reason for the chase. Relying on section 901.19, this court concluded the officers’ warrant-and-knoek and announce-less entry after him was unlawful. See also Espiet v. State, 797 So.2d 598, 603 (Fla. 5th DCA 2001) (concluding that the State failed to present evidence of exigent circumstances excusing the deputies’ failure to obtain an arrest warrant); M.J.R. v. State, 715 So.2d 1103, 1104 (Fla. 5th DCA 1998) (concluding that a warrantless non-emergency arrest of a suspect at his or her home is presumed illegal); compare Rucker v. State, 302 So.2d 490, 491 (Fla. 2d DCA 1974). The officers’ “chase” of Brown was a far cry from what occurred in Ortiz, which was in sum not in “hot” or “fresh,” but rather lukewarm and stale pursuit. See When is Warrantless Entry of House or Other Building Justified, supra §§ 17-40 passim (citing cases where entries held unjustified as not true hot pursuits). By virtue of their respective resemblance or lack of it to our case, Ortiz does not control and Ulysse and Gasset do.
Moreover, we find Ortiz’ analysis of the statute even on its own facts quite problematic. As we see it, the portion of the statute on which it primarily relies, that the police may enter “when authorized for a felony without a warrant,” which Ortiz takes as negatively implying the reverse, *774 that is, that police cannot enter, presumably even in hot pursuit, when making a warrantless arrest for a misdemeanor, cannot be properly read in that way. On its face, the quoted provision applies only when, as in U.S. v. Banks, 540 U.S. 31, 43, 124 S.Ct. 521, 157 L.Ed.2d 343 (2003), the police receive no reply in response to a lawful knock and announcement: it cannot apply when, as in this case, no knock and announce is required or appropriate. See id. at 36, 124 S.Ct. 521 (“the [knock and announce] obligation gives way when officers ‘have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or ... would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence,’ ”) (quoting Richards v. Wisconsin, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997)). If literally applied, the court’s language in Ortiz unacceptably would nullify the portion of section 901.15 which authorizes an arrest after a fresh pursuit without any exception when a closed door, much less an open one, as here, intervenes.
2. Approaching the issue from a broader perspective, we believe that for fundamentally the same reasons that a true hot pursuit is excepted from the warrant requirement, it must, as a matter of law and logic, also preclude and application of the knock and announce rule. The two doctrines simply cannot co-exist.[3] It would be no less than ridiculous to put such a requirement on officers in such situations. See State v. Webb, 398 So.2d 820, 824 (Fla.1981) (“construction of a statute which would lead to an absurd or unreasonable result or would render a statute purposeless should be avoided.”); State v. Olson, 586 So.2d 1239, 1243 (Fla. 1st DCA 1991) (statutes must be read so as to “avoid unconstitutional results ... and absurd ones”). In this case, it would be both purposeless and dangerous for the law to require an officer to knock and announce his presence to an armed defendant like Brown who obviously knew he was there, who is being freshly pursued, and who had already specifically disobeyed commands to stop. See Brigham City, Utah v. Stuart, 547 U.S. 398, 406-7, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006) (concluding that knocking on the front door would have been futile); Jones v. State, 440 So.2d 570, 573 (Fla.1983); Benefield v. State, 160 So.2d 706, 710 (Fla.1964) (observing “even if probable cause exists for the arrest of a person, our statute is violated by an unannounced intrusion in the form of a breaking and entering any building, including a private home, except ... where the person within already knows of the officer’s authority and purpose.... ”); Van Allen v. State, 454 So.2d 49, 51 (Fla. 4th DCA 1984) (“knock and announce is unnecessary “where the person within already knows of the officer’s authority and purpose’ ” (quoting Benefield, 160 So.2d at 710)); Moreno v. State, 277 So.2d 81, 83 (Fla. 3d DCA 1973); see generally Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56;[4] When is Warrantless Entry of House *775 or Other Building Justified, supra.[5]
3. Finally we believe that reversal is required even if we are wrong on the knock and announce point. This is so because of the holding of Hudson that even established violations of the principle do not implicate the exclusionary rule so as to suppress pertinent evidence. We follow Hudson both because we are persuaded by its reasoning on the point[6] and because we are required to do so by Article 1, section 12,[7] of the Florida Constitution. See State *776 v. Betz, 815 So.2d 627, 631 (Fla.2002). Contra Cable v. State, 18 So.3d 37, 39-40 (Fla. 2d DCA), review granted, 22 So.3d 539 (Fla.2009) (certifying question).
V
The order under review is therefore reversed and the cause remanded for denial of the motion to suppress.

. Numerous cases establish the application of this exception. See United States v. Santa, 236 F.3d 662 (11th Cir.2000) (concluding that the exigency exception applies when the inevitable delay incident to obtaining a warrant must give way to the urgent need for immediate action, such as a "hot pursuit" of a fleeing suspect); Seibert v. State, 923 So.2d 460, 468 (Fla.2006) ("the exigency exception to the warrant requirement generally permits the police to enter a home if there is an apparent emergency justifying their entry”); State v. Barmeier, 878 So.2d 411, 413 (Fla. 3d DCA 2004) (concluding that entry was permitted after 911 call from defendant about problems with his tenant, when responding officers found front door open and received no response when they called out to the residents); State v. Boyd, 615 So.2d 786 (Fla. 2d DCA 1993) (stating test as whether there are objectively reasonable circumstances that convey to a police officer an articulable, reasonable belief that the exigency exists; the exigency need not, in fact, exist).

. Section 901.19(1), Florida Statutes (2007), provides:
If a peace officer fails to gain admittance after she or he has announced her or his authority and purpose in order to make an arrest either by a warrant or when authorized to make an arrest for a felony without a warrant, the officer may use all necessary and reasonable force to enter any building or property where the person to be arrested is or is reasonably believed to be.

. It is for this simple reason that, as the Ortiz panel seemed to somehow deem significant, K & A was not even raised in Gasset. Ortiz, 600 So.2d at 532. (This was true in Ulysse as well.) Everyone knew, as we do, that the doctrine was simply not applicable to those pursuits.

. Hudson, 547 U.S. at 589-90, 126 S.Ct. 2159 explains:
Wilson [v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995)] and cases following it have noted the many situations in which it is not necessary to knock and announce. It is not necessary when “circumstances presenft] a threat of physical violence," or if there is "reason to believe that evidence would likely be destroyed if advance notice were given," id., at 936, 115 *775 S.Ct. 1914, or if knocking and announcing would be "futile," Richards v. Wisconsin, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). We require only that police "have a reasonable suspicion ... under the particular circumstances” that one of these grounds for failing to knock and announce exists, and we have acknowledged that "[t]his showing is not high.” Ibid, [e.s.]
[[Image here]]
One of those interests [protected by the knock and announce requirement] is the protection of human life and limb, because an unannounced entry may provoke violence in supposed self-defense by the surprised resident. Another interest is the protection of property. Breaking a house (as the old cases typically put it) absent an announcement would penalize someone who “ ‘did not know of the process, of which, if he had notice, it is to be presumed that he would obey it.... ’ ” The knock-and-announce rule gives individuals "the opportunity to comply with the law and to avoid the destruction of property occasioned by a forcible entry.” And thirdly, the knock- and-announce rule protects those elements of privacy and dignity that can be destroyed by a sudden entrance. It gives residents the "opportunity to prepare themselves for” the entry of the police. "The brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on clothes or get out of bed.” In other words, it assures the opportunity to collect oneself before answering the door.
(citations omitted). None of these reasons apply to this set of facts.

. We announce the following immutable laws of physics and search and seizure:
K & A = No HP
HP = No K & A

. Hudson, 547 U.S. at 591-594, 126 S.Ct. 2159, concludes:
Suppression of evidence ... has always been our last resort, not our first impulse.
The exclusionary rule generates "substantial social costs,” United States v. Leon, 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), which sometimes include setting the guilty free and the dangerous at large. We have therefore been "cautio[us] against expanding” it, Colorado v. Connelly, 479 U.S. 157, 166, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), and "have repeatedly emphasized that the rule’s 'costly toll’ upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application,” Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 364-365, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). We have rejected “[indiscriminate application” of the rule, Leon, supra, at 908, 104 S.Ct. 3405, and have held it to be applicable only "where its remedial objectives are thought most efficaciously served,” United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)—that is, "where its deterrence benefits outweigh its ‘substantial social costs,' ” Scott, supra, at 363, 118 S.Ct. 2014 (quoting Leon, supra, at 907, 104 S.Ct. 3405).
[[Image here]]
The interests protected by the knock-and-announce requirement are quite different— and do not include the shielding of potential evidence from the government’s eyes.

. Art. 1 § 12, Fla. Const., provides:
The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, and against the unreasonable interception of private communications by any means, shall not be violated. No warrant shall be issued except upon probable cause, supported by affidavit, particularly describing the place or places to be searched, the person or persons, thing or things to be seized, the communication to be intercepted, and the nature of evidence to be obtained. This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted *776 by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution.